RED ROCK *v.* HENRY.

1. A statute is not repealed by a later affirmative statute, which contains no repealing clause, unless the conflict between them cannot be reconciled, or the later covers the same ground as the former, and is clearly intended as a substitute therefor.

2. The statute of Minnesota of March 6, 1868, pursuant to which certain bonds were issued by the town of Red Rock, to aid in the construction of a railroad, was not repealed by the statute of March 5, 1870, *post,* p. 599.

3. The act of March 2, 1871, *post,* p. 600, has no effect upon the rights of the holder of the bonds, as there had been a previous compliance with every condition upon which the town had agreed to issue them.

ERROR to the Circuit Court of the United States for the District of Minnesota.

The legislature of the State of Minnesota, on March 6, 1868, passed an act entitled "An Act to authorize the towns in Fillmore, Mower, Freeborn, Faribault, Martin, and Jackson Counties to issue bonds to aid in the construction of any railroad running into or through said counties." The first three sections of the act, the only ones material to this case, are as follows : —

" SECT. 1. Each town in the counties of Fillmore, Mower, Freeborn, Faribault, Martin, and Jackson is authorized to issue bonds as hereinafter provided to aid in the construction of any railroad running into, or proposed to be built through, either or all of the counties aforesaid.

" SECT. 2. Said bonds shall be issued in sums of not less than one hundred dollars each, may bear interest at a rate not exceeding ten per cent. per annum, payable annually, and shall run for a period not exceeding ten years from their respective dates. They shall be signed by the chairman of the board of supervisors, and countersigned by the town clerk of such towns; and the principal and interest as they become due shall be payable to the person or corporation to whom they shall be issued, or bearer, on presentation to the town treasurer.

" SECT. 3. Any town in either of the aforesaid counties may, at any usual or regularly called special meeting, by vote of a majority of the legal voters of such town present and voting, fix the amount and size of bonds to be issued by such town, the rate of interest and the date of payment of all and any thereof, and the person or cor-

poration to whom the same shall be issued and made payable, and the time at which and the terms and conditions upon which the same will be issued; and such town may, at such meeting, by vote, delegate all or any of the foregoing powers to the board of supervisors or any committee appointed by the town."

This act was amended Feb. 27, 1869, by substituting "thirty" for "ten" years, as the limit of time at or within which the bonds were to be made payable.

While the act, thus amended, was in force, to wit, May 9, 1869, the Southern Minnesota Railroad Company, by Clark W. Thompson, its general manager, made the following proposition to certain towns in the counties of Mower and Fillmore, among which was the town of Red Rock, the plaintiff in error: —

"I propose, in the name of the Southern Minnesota Railroad Company, to build and put in operation the Southern Minnesota Railroad, from its present terminus in Fillmore C  inty to some point on the Minnesota Central Railroad, on or before the thirty-first day of December, one thousand eight hundred and seventy-two, on the following conditions, to wit: —

"That the following towns in Fillmore and Mower Counties shall vote and certify to the Southern Minnesota Railroad Company the following amount of bonds of their respective towns, payable in twenty years, with seven per cent. annual interest  Fillmore, fifteen thousand dollars; Spring Valley, twenty-five thousand dollars; Frankfort, fifteen thousand dollars; Grand Meadow, fifteen thousand dollars; Red Rock, twenty-five thousand dollars, and Waltham, fifteen thousand dollars; the bonds not to be delivered, and the interest not to commence, until said completed road shall reach the town, or some point as far west as the eastern line of the town, voting the aid, if said road shall be done by the time specified."

A special meeting of the legal voters of the town of Red Rock was held May 15, 1869, at which a majority of them then present and voting adopted the following resolutions: —

"*Resolved*, That under the provisions of an act of the legislature of the State of Minnesota, entitled 'An Act to authorize the counties of Fillmore, Mower, Freeborn, Faribault, Martin, and Jackson

to issue bonds to aid in the construction of any railroad running into or through said counties,' the supervisors of the town of Red Rock, Mower County, Minnesota, and their successors in office be, and are hereby, authorized and required to issue and deliver to the Southern Minnesota Railroad Company the bonds of said town, with interest coupons attached, to the amount of twenty-five thousand dollars, such bonds to bear interest at the rate of seven per cent. per annum, payable annually ; such bonds to be issued in denominations of not less than one thousand dollars each; and to be payable in twenty years from their date, and to be signed by the chairman of said board of supervisors and attested by the clerk of said town, whenever said railroad company shall have completed its said road, from its present termination, Fillmore County, to some point within one hundred rods of the southeast corner of the northeast quarter of section nine in township one hundred and three north of range seventeen west, and shall have established a regular freight and passenger depot and are doing business therefrom.

"*Resolved,* That the bonds shall not be issued or delivered to said company, and no obligation incurred by said town by voting of this resolution, unless said company shall have completed said road to said point by the thirty-first day of December, one thousand eight hundred and seventy-two."

Prior to the issue of the bonds mentioned in these resolutions the company never formally agreed in writing to the terms and conditions on which the bonds were voted, but in the fall of 1869 it located its road between the points and upon the line mentioned in the above resolution; and in December of that year it let the contract for constructing that portion of its line so located. Work was at once begun, and was carried on during the winter, spring, and summer of the year 1870.

Before the close of the summer, and more than two years before the time fixed in the resolution, the company had complied with all the terms and conditions of that resolution, and had completed its road between the points and upon the line prescribed in the resolution, and had built the depot, and was " doing business thereupon."

Whereupon, in pursuance of the proposition made to the company in said resolution of May 15, 1869, the town of Red Rock, on March 9, 1871, issued to the company twenty-five bonds of $1,000 each, falling due in twenty years. The bonds

referred on their face to the law of the State and the vote of the legal voters of the town of Red Rock by which it was supposed the issue of the bonds was authorized, and they recited that the company had fully performed the conditions upon which the town had promised to issue the bonds.

After the issue of the bonds, and before the maturity of the first coupons thereunto attached, the company sold, transferred, and delivered the bonds, with all the coupons appertaining and attached thereto, to Jacob A. Henry, for the consideration of $900 for each of said bonds, such price then being their full market value, and he forthwith paid the money to the company. At the time of such purchase and payment, he had no knowledge of any of the special acts of legislature hereinafter mentioned, and no knowledge of the proceedings of the electors or other authorities of the town, except what he derived from the recitals contained in the bonds.

He brought this suit upon the coupons which matured since he became the holder of the bonds.

The defence set up was this : That before the company had fully complied with the conditions upon which the town had proposed to issue its bonds, to wit, on March 5, 1870, the legislature of Minnesota passed an act, the sections of which pertinent to this case are as follows : —

" SECT. 1. Each township and village, town and incorporated city" in the counties of Mower, Dodge, Goodhue, and Dakota, by a vote of a majority of the supervisors of any township, or of the majority of the city council of any such village, town, or city, as hereinafter provided, may create and issue its bonds, with interest coupons attached, to aid in the construction of any railroad running into or proposed to be built through either or all of the counties aforesaid.

" SECT. 2. The majority of the supervisors of any township, or the majority of the village, town, or city council of any such village, town, or city in the aforesaid counties, may fix the amount and size of the bonds to be issued by said township, village, town, or city, the rate of interest and the date of payment of all or any part thereof, and the person or corporation to whom the same shall be issued and made payable, and the time at which, and the terms and conditions upon which the same shall be issued to such corporation.

"SECT. 3. Before the bonds are issued in any township or incorporated village, town, or city, the question of issuing them shall be submitted to the legal voters thereof by the supervisors of said township or by the council of said village, town, or city. And the supervisors of townships and common councils of said villages, towns, and cities are hereby authorized to appoint and call special elections for such purposes, which elections shall be called and conducted in such form and manner as elections are usually conducted in such townships, villages, towns, or cities."

The act further provided, that if the majority of the voters at such election voted for the issue of the bonds, the said supervisors or the said common council should cause the bonds to be delivered to the railroad company whenever it should have complied with the terms and conditions upon which the bonds were to be issued.

Afterwards, to wit, on March 2, 1871, and before the bonds in controversy were issued, the legislature amended the first section of the act, so as to make it read as follows: —

"SECT. 1. Each township, village, town, and incorporated city in the counties of Mower, Dodge, and Goodhue, by a vote of a majority of the supervisors of any township or of the majority of the city council of any such village, town, or city, subject to the approval and ratification of the legal voters of said township, village, town, or city, as hereinafter provided, may create and issue its bonds, with interest coupons attached, to aid in the construction of any railroad running into or proposed to be built through either or all the counties aforesaid."

This was followed by a repealing section, as follows: —

"SECT 2. All acts and parts of acts inconsistent with this act are hereby repealed."

The contention of the town was that the act of 1868, under which it was claimed that the bonds had been issued, had been repealed by the above-mentioned acts of 1870 and 1871. Upon this question the judges of the Circuit Court were divided in opinion. In accordance with the opinion of the presiding judge, judgment was rendered in favor of Henry, and the question upon which the judges differed was certified to this court for its decision.

· *Mr. Gordon E. Cole* for the plaintiff in error.

*Mr. E. G. Rogers* and *Mr. W. P. Clough* for the defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court.

The statute of March 5, 1870, is an affirmative act, and contains no express repeal of the act of March 6, 1868. The question is, therefore, whether the former act repeals the latter by implication. The leaning of the courts is against repeals by implication, and if it be possible to reconcile two statutes, one will not be held to repeal the other. *McCool* v. *Smith*, 1 Black, 459; *United States* v. *Tynen*, 11 Wall. 88.

It was held in *Wood* v. *United States*, 16 Pet. 342, that a repeal by implication must be by " necessary implication ; for it is not sufficient to establish that subsequent laws cover some or even all the cases provided for by it, for they may be merely affirmative or cumulative or auxiliary."

In *United States* v. *Tynen, ubi supra*, it was declared by Mr. Justice Field, speaking for the court, that " it is when the later act plainly shows that it was intended as a substitute for the former act that it will operate as a repeal of that act."

So in *Henderson's Tobacco*, 11 Wall. 652, this court said, Mr. Justice Strong delivering its opinion, that " when the powers and directions under the several acts are such as may well subsist together, an implication of repeal cannot well be allowed."

In *King* v. *Cornell*, decided at the present term, the Chief Justice, expressing the opinion of the court, on this point said: " While repeals by implication are not favored, it is well settled that when two acts are not in all respects repugnant, if the later act covers the whole subject of the earlier and embraces new provisions which plainly show that the last was intended as a substitute for the first, it will operate as a repeal." *Ante*, p. 395. See also *Murdock* v. *City of Memphis*, 20 Wall. 590.

The result of the authorities cited is that when an affirmative statute contains no expression of a purpose to repeal a prior law, it does not repeal it unless the two acts are in irreconcilable conflict, or unless the later statute covers the whole

ground occupied by the earlier and is clearly intended as a substitute for it, and the intention of the legislature to repeal must be clear and manifest.

Guided by this rule, we are to settle the question upon which the judges of the Circuit Court were divided in opinion.

It must be conceded that while the act of 1868 requires only the vote of a majority of the legal voters of the town before the bonds authorized thereby could be lawfully issued, the act of 1870 requires a vote of a majority of the supervisors, as well as a vote of the majority of the legal voters, to warrant the issue of bonds under its authority. It is, therefore, clear that the conditions upon which the towns of Mower County were authorized to issue their bonds were different under the two acts. Nevertheless, we are of opinion that the latter act was neither repugnant to, nor was it intended as a substitute for, the former. This, we think, will appear from the following considerations.

The act of 1868 authorized the issue of bonds by the towns of five counties; namely, Fillmore, Mower, Freeborn, Faribault, Martin, and Jackson. The map of Minnesota discloses the fact that they form a part of the southern tier of the counties of the State, and, beginning at the Mississippi River, extend in a right line from east to west in the order named in the act. It appears from the record that prior to the passage of the act of 1868 the Southern Minnesota Railroad Company was chartered and empowered to construct and use a railroad from the Mississippi River westward across the State of Minnesota to its western boundary. This fact makes it reasonably clear that the object of the act of 1868 was to authorize the towns of the counties named to issue their bonds in aid of the construction of that line of railroad.

The act of 1870 authorizes the towns, &c., of the counties of Mower, Dodge, Goodhue, and Dakota to issue bonds to aid in the construction of any railroad running into or proposed to be built through either or all of said counties. The map shows that these counties, beginning with Mower, on the southern boundary of the State, extend in a line northwardly to the Mississippi River opposite St. Paul. It is, therefore, reasonably clear that the purpose of this law was to aid in the construction.

of a line of railroad running north and south through these counties. It is true that each of the acts authorizes the towns to issue bonds in aid of any railroad running into either of the counties named therein, but this fact is consistent with the general purpose of the act as above indicated.

We have, therefore, two acts, one passed to authorize the towns in a certain group of counties to aid in the construction of one line of railroad, and the other to authorize the towns in another group of counties to aid in the construction of another line of road, and the county of Mower happens to be common to both groups.

When we consider the different objects which it is reasonably clear the legislature had in view in the passage of these two acts, it is a fair construction to hold that it was not the intention of the legislature, by the passage of the later act, to repeal the older act, either totally or partially.

It is not contended that the supposed repeal affected any of the counties named in the first act except the county of Mower. If the method of authorizing the issue of bonds in that act was an unsafe and vicious one, which the legislature intended to change, why did it not repeal the act as to other counties and apply to them also the restrictions contained in the later act?

It would not be an unwarranted construction of the two acts to hold that bonds, issued in aid of an east and west line of railroad, passing through the counties named in the act of March 6, 1868, should be issued in conformity with that act, and that bonds issued in aid of a north and south line of railroad, running through the counties named in the act of March 5, 1870, should be issued in conformity with the latter act.

We think that the circumstance that the county of Mower happens to be in both groups of counties, does not show a purpose on the part of the legislature to repeal the first act, so far as it affects that county.

The language of the act of 1868 might have been sufficient to authorize the towns in Mower county to issue bonds in aid of a north and south line of railroad, but it was necessary to pass an act to authorize the towns in the counties of Dodge, Goodhue, and Dakota, to issue bonds in aid of such a road. In

passing this act the county of Mower was included, doubtless, for the purpose of making clear and unquestionable the authority of towns in that county to issue bonds for the same purpose.

We, therefore, find no repugnance between the statutes, nor do we find the later act to be a revision of the entire subject covered by the older act, nor to be intended as a substitute for it. There is, therefore, no repeal.

There is another consideration which is entitled, in our opinion, to some weight, and that is, that before the act of 1870 was passed, the railroad company had made considerable progress in performing the conditions upon which the town of Red Rock had agreed to issue its bonds. It had located its line of road according to the proposition made by the town, and had for more than two months been engaged in constructing its road upon that line. It is true it was under no binding contract with the town to go on and complete the line, but it had unmistakably manifested its purpose to do so, and had expended and was expending large sums of money in an effort to comply with the conditions upon which the town had agreed to issue its bonds. If, under these circumstances, the legislature had withdrawn the authority of the town to issue its bonds or had imposed new conditions upon the issue, it would have been an act of bad faith. If possible, we should give such a construction to the act of the legislature as would relieve the State from such an imputation. *Broughton* v. *Pensacola*, 93 U. S. 266.

The amendatory act of March 2, 1871, with its repealing clause, can have no effect on this controversy. That act was passed more than six months after the company had fully complied with all the conditions upon which the town of Red Rock had agreed to issue its bonds. It was too late then for the legislature to interfere. The company was entitled to the bonds, and any attempt by the legislature to forbid their issue would have been unconstitutional and void.

The burden is on the town to make it appear that the act of March, 1868, which authorized the issue of the bonds, the coupons of which are in suit, was repealed by the subsequent act of 1870. In view of the considerations which we have stated,

we are of opinion that the repeal has not been satisfactorily shown. On the contrary, we think it reasonably clear that no repeal of the former act was intended by the passage of the act of 1870.

As these views coincide with those of the presiding judge of the Circuit Court, upon which the judgment was based, it follows that it must be affirmed ; and it is

*So ordered.*