**BULLOCK v. SPENCER et al.**

Civ. A. No. 1678–53.

United States District Court
District of Columbia.

May 4, 1953.

148

---

Charles E. Ford, of Washington, D. C., for plaintiff.

Vernon E. West, Corporation Counsel, and Oliver Gasch, Asst. Corporation Counsel, for the District of Columbia, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This case came on for a hearing on the defendants' motion to dismiss the complaint or in the alternative for summary judgment.

The suit is brought by a member of the Metropolitan Police Department of Washington, D. C., against the Board of Commissioners for the District of Columbia and the Chief of Police. The complaint consists of two counts. The first count alleges that the plaintiff has been suspended from duty and that the Chief of Police has refused to grant his request to be removed from suspension. It seeks a mandatory injunction directing the defendants to restore him to duty. The second count alleges that the plaintiff has become eligible for voluntary retirement by virtue of having served as a member of the Metropolitan Police Department for more than twenty-five years and having attained the age of fifty-five years; that he has requested retirement; but that the defendants have failed and refused to act on his request. Accordingly, the plaintiff prays for a mandatory injunction directing the defendants to effect his retirement, and to allow him the retirement annuity provided by law.

At the conclusion of the argument, the Court dismissed the first count of the complaint. The Chief of Police is clothed with broad powers to administer the Metropolitan Police Department, to assign its personnel, and to discipline its members. The courts may not interfere with the internal management of the Department. Any other rule would be intolerable. It might be ruinous to the efficiency and morale of the police force and adversely affect the police protection of the community.

The validity of these principles is demonstrated by the record before the court in the case at bar. The defendant Robert V. Murray, the Chief of Police, states in an affidavit that the plaintiff was suspended from duty because of his failure to explain and reveal the sources of his income to a subcommittee of a Senate Committee investigating crime and law enforcement in the District of Columbia, and further because of his failure to explain the sources of his income to the Chief of Police. Formal charges have been filed against the plaintiff embodying these specifications as well as accusing him of a failure to file District of Columbia income tax returns for the years 1946, 1947 and 1948. He has been ordered to report before a Police Trial Board for trial.

The charges are grave and serious. Refusal by a Government officer or employee to disclose to proper authority sources of outside income can hardly be treated with indifference. For obvious reasons, the public has an interest in this matter. This is especially true in the case of law enforcement officers. If the income is honestly derived, no reason is perceived why this fact should not be revealed to a superior officer or to a Congressional Committee. Concealment naturally arouses suspicion. At times it leads to an unfavorable inference. It is not unreasonable to assume that resort would not be had to concealment unless there was something to conceal. Similarly, failure to file income tax returns may be a criminal offense. Manifestly the charges should be tried. It is entirely proper, in fact desirable, to suspend the plaintiff from duty until a final disposition is reached in respect to them.

 There remains for consideration the second count of the complaint, which involves the right of the plaintiff to retire and to receive the retirement annuity provided by law. The solution of this problem depends, in turn, on the statutory provisions relating to retirement annuities for members of the Metropolitan Police Department. The fund out of which the payments are made is created by statute, D.C. Code 1951, Title 4, Secs. 503, 504. Five percent is deducted from the monthly salary of every member of the Police and Fire Departments and is paid into the fund.[1] To these accumulations there are added all fines imposed on members of either Department by way of discipline, as well as rewards, proceeds of gifts, and emoluments that may be received by any member of either department for extraordinary services, except such part thereof as the Commissioners may allow to be retained by the member. Finally the net proceeds of sales of unclaimed property in the custody of the property clerk of the Police Department, also find their way into the fund. If at any time it is insufficient to defray expendi-

tures, the Commissioners of the District of Columbia are required to direct the Collector of Taxes to pay into the fund such sums as may be necessary to meet the deficiencies. It is clear, therefore, that the fund is maintained in connection with a contributory retirement system, and that one of its principal sources consists of monthly deductions taken from the salaries of policemen and firemen.

The statute provides for retirement of two types. The first is retirement for total disability, Sec. 507, and the second is retirement on a longevity basis, Sec. 508. In addition, an allowance for temporary disability incurred in the actual discharge of duty may be paid from the fund, Sec. 506. We are concerned here with retirement on the basis of longevity.

The law provides, Sec. 508, that any member of the Metropolitan Police Department who "has served twenty-five years or more as a member of such department * * * and having reached the age of fifty-five years * * * may, *at his election,* be retired from the service * * * and *shall be entitled to receive retirement compensation from the said * * * fund * * * in an amount equal to 50 per centum per annum of the salary received by him at the date of retirement".*[2] In other words, a police officer who has served twenty-five years as a member of the police department and who has reached the age of fifty-five, is accorded the option of retiring, and receiving an annuity equal to 50 per cent of the salary received by him at that time. The election to retire for longevity is granted to the police officer. No choice is extended to the Department. It is claimed by the defendants, however, that the right to retire is not absolute, but that the District of Columbia Government has discretion to grant or deny an application to retire for longevity. Two arguments are advanced in support of this contention. The first is that the word "may" rather than "shall" is used in the statute. Obviously, however, the word

---

1. Section 503, which provides for a deduction of 3½% has been amended by Section 504, which provides for a deduction of 5%.

2. Emphasis supplied.

"may" is used in order to grant to the police officer eligible to retire the privilege of doing so. He has the choice whether to exercise the right of retiring for longevity. He "*may* retire at his election." Moreover, the words "may" and "shall" are frequently used interchangeably without too great an effort to be precise.

■ ■ The principal basis for the position advanced by the District of Columbia Government is that Section 510 creates a Board to be known as the Police and Firemen's Retiring and Relief Board, and that the statute further provides that "The said board shall consider all cases for the retirement and relief of members of the police department and the fire department". It is argued that this provision implies that the Board is vested with discretion to grant or deny applications for retirement predicated on longevity. This conclusion by no means follows. It must be borne in mind that some agency is needed to adjudicate applications for retirement for disability, because at times such applications involve a determination of close and difficult questions of fact. Likewise it is necessary to establish some agency to pass on applications for temporary relief. Doubtless the Board was organized with these considerations in mind. It was also granted jurisdiction over applications for retirement for longevity. In these cases its function is limited and restricted. It is confined to deciding whether the applicant has had the required length of service and has reached the requisite age.

The mere fact that a Board is established to pass on applications does not give rise to an inference that the Board has discretion to grant or deny applications for reasons not specified in the statute. Its function is to determine whether the applicant for retirement is within the pertinent statutory provisions. If the Board had broad powers not conferred by statute a question would arise how far its discretion could be carried. For example, could it deny an application for retirement for longevity because of shortage of policemen? Could it deny an application for retirement because the police officer was guilty of some minor infraction of discipline? If the argument of the defendants' counsel is correct, then the Board would have a right to deny any application for any reason whatsoever so long as it did not act arbitrarily and capriciously. To endow the Board with such authority requires express statutory provisions. None, however, exist. The Congress has not seen fit to include in the statute the terms that the defendants' counsel would read into it by implication.

A similar question was presented in Rudolph v. Mosheuvel, 37 App.D.C. 76, 82. A fireman, who sustained severe injuries in the performance of his duties, applied for retirement for disability. Subsequently charges were filed against him and he was dismissed from the force. The court held that he was nevertheless entitled to retirement pay. Mr. Chief Justice Shepard said:

" * * * the right of the relator to retirement on a pension under the terms of the law were fixed at the time that he received his injuries. * * * The commissioners could not, by dismissing him on charges made thereafter, deprive him of the bounty provided by law, which they had no power to suspend. Having come within the terms of the statute, no power less than that of Congress could repeal or suspend its benefits."

Applying this doctrine to the instant case, the plaintiff's right to a retirement annuity became fixed when he completed twenty-five years of service and reached the age of fifty-five.

It is important to bear in mind that the retirement annuities involved in this case are not pensions or gratuities. They are paid out of a fund to which each officer makes a considerable contribution. The payments are in the nature of old age insurance, rather than old age pensions. The system is a contributory one. It is in the public interest that the integrity of old age retirement plans be maintained. Contributory plans of this nature have developed both in Government and in private industry very rapidly during the past generation. Their creation and growth are due to an enhanced social consciousness, which recognizes that the average person who works

for a salary or wages, is generally unable to save enough to provide for his old age. Retirement systems have been introduced for the purpose of alleviating hardship and distress that had existed on a large scale for centuries, and also for the purpose of protecting the public treasury from large payments for relief to indigent old people. The statutory construction for which defendants' counsel contend might adversely affect not only the policemen's and firemen's retirement plan, but also the much larger contributory schemes for employees of the Federal Government. Wrath aroused by an individual case, no matter how well-founded and wholesome, must not be permitted to sway our judgment to the extent of leading us to cut loose from our moorings and devise a new rule for the occasion, which may plague us in the future and possibly impair a well-organized beneficent system.

The defendants' counsel while minimizing the importance of the decision in Rudolph v. Mosheuvel, 37 App.D.C. 76, which is binding on this Court, cite several cases from other jurisdictions. Each of these rulings, however, depends on the phraseology of a different statute.

The statute involved in People ex rel. Brady v. Martin, 145 N.Y. 253, 39 N.E. 960, decided by the New York Court of Appeals in 1885, expressly provided that any member of the police force who had served for a period of twenty years or more, might in the discretion of the Board of Police *by a resolution adopted by a majority vote of the full board* be retired from service and placed on the pension roll. Thus the law in express terms conferred discretion on the Board of Police to grant or deny retirement. No such provision is found in the statute involved in this case.

The pertinent statute in Pierne v. Valentine, 291 N.Y. 333, 52 N.E.2d 890, provided that the granting of a pension on severance from service for fault or delinquency shall not be a matter of right, but such a pension might be granted by the board of trustees by a two-thirds vote. No similar provision is contained in the District of Columbia Act.

People ex rel. Hardy v. Greene, 87 App. Div. 589, 84 N.Y.S. 673, is a decision of a New York intermediate appellate court rendered in 1903. The result was reached by a vote of three to two. A vigorous dissenting opinion urged that the relator's right to a pension was indefeasible. Consequently great weight may not be attached to this case, especially as against the authority of the Court of Appeals for this Circuit, Rudolph v. Mosheuvel, 37 App.D.C. 76.

The remaining opinions cited by defendants' counsel either fail to state the contents of the pertinent statute or else do not deal with the point presented here. Consequently they are not helpful.

There is no doubt that the Metropolitan Police Department has the power to try the plaintiff on charges, and if found guilty to punish him either by a fine, or other disciplinary penalty, such as removal from the service. It is proper to delay his retirement for a reasonable time for that purpose. The plaintiff, however, has a right to receive the retirement annuity and is entitled to be placed eventually on the retirement roll on the basis of longevity.

The defendants' motions as to Count II of the complaint are denied.