Samuel SPENCER, et al., Appellants,

v.

Albert I. BULLOCK, Appellee.

No. 12014.

United States Court of Appeals
District of Columbia Circuit.

Argued April 21, 1954.

Decided Oct. 7, 1954.

Petition for Rehearing Denied
Nov. 8, 1954.

Fahy, Circuit Judge, dissented.

Mr. Harry L. Walker, Asst. Corp. Counsel for the District of Columbia, Washington, D. C., with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, and Milton D. Korman and John Hampton Baumgartner, Jr., Asst. Corp. Counsels, Washington, D. C., were on the brief, for appellants.

Mr. Charles E. Ford, Washington, D. C., with whom Mr. Joseph Sitnick, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

The defendants, who are the Commissioners of the District of Columbia and the Chief of its Metropolitan Police Department, appeal from a judgment that they retire the plaintiff from the department and award him retirement compensation.[1]

The plaintiff was suspended from the police department, because of a conspiracy indictment, from October 23, 1951 to January 29, 1952. But the District Court directed his acquittal and the department restored him to duty. On February 11, 1952 he applied for retirement. He was then in active service as a police inspector. He had served 25 years and had reached the age of 55. The defendant Commissioners had asked for a study of certain testimony he had given, but no charges were pending against him.

An Act of Congress provides: "Whenever any member of the Metropolitan police department of the District of Columbia * * * has served twenty-five years or more as a member of such department * * * and having reached the age of fifty-five years, he may, at his election, be retired from the service * * and shall be entitled to receive retirement compensation from the * * * policemen and firemen's relief fund, District of Columbia, in an amount equal to 50 per centum per annum of the salary received by him at the date of retirement * * *." D.C.Code (1951) § 4–508, 54 Stat. 1118 (1940).

After the plaintiff had made his "election" to be retired he was asked by a Senate subcommittee, and ordered by the defendant Chief of Police, to explain the source of some of his income. He failed to do so. The Chief of Police therefore suspended him May 23, 1952. A police trial board found, also, that he had failed to file required income tax returns for 1946, 1947 and 1948. For these reasons the defendant Commissioners dismissed him from the police department September 14, 1953. They did not act directly on his application for retirement but ordered that his contributions to the retirement fund be returned to him.

We agree with the District Court that the plaintiff was entitled to retirement. The statute quoted above, § 4–508, says "any member" of the police department who has served 25 years and reached 55 "may, at his election, be retired from the service * * * and shall be entitled to receive retirement compensation * * *." This covers the plaintiff. We need not consider whether it would cover a member of the department who was under suspension, and therefore not actively *in* the service, when he elected to be retired "from" the service. Obviously it would not cover a former member who was already dismissed. The plaintiff was in active service when he made his election. He was qualified as to age and length of service. The statute imposes no other qualifications. We cannot read it as authorizing the Commissioners to deprive the plaintiff of a pension by making, after he elected to retire, the charges on which they dismissed him.[2]

The words "may, at his election, be retired" are equivalent to "may elect to be retired". Since Congress was offering an "election" it said *may* and not *shall*. To say that a policeman may at his election be retired is not to say that after he has made his election the Commissioners may, at their election, refuse to retire him.

1. A previous order denied motions by the defendants to dismiss the complaint. Bullock v. Spencer, D.C., 112 F.Supp. 147.

2. "The commissioners could not, by dismissing him on charges made thereafter, deprive him of the bounty provided by law, which they had no power to suspend." Rudolph v. Mosheuvel, 37 App. D.C. 76, 82.

D.C.Code (1951) § 4–513 authorizes the Commissioners to "reduce or discontinue" relief for conduct very different from the plaintiff's.

■ D.C.Code (1951) § 4–507, 39 Stat. 718, is not entirely consistent with § 4–508, which we are construing. Section 4–507 was enacted in 1916 and § 4–508 in 1940. To the extent of the inconsistency, the later statute supersedes the earlier.

■ As a matter of policy something may be said for, and against, § 4–508. (1) It may be thought to promote the quality of the police force, since relatively certain pensions tend to make a relatively attractive job. It would be no help in recruiting policemen, or in keeping them, to say that the Commissioners may always deny a man a pension if they conclude he is unworthy of one. (2) On the other hand, it may be thought that policemen are more likely to behave well if they can always be denied a pension for behaving ill. The plaintiff appears to have behaved ill. Though Congress seems to have given weight to the first of these conflicting considerations of policy, the Corporation Counsel seems to recognize only the second, for he says "The morale and efficiency of the Police Department * * * would be seriously affected by an affirmance of the decision of the lower court in this case." On balance, morale and efficiency are perhaps as likely to be affected favorably as unfavorably. However that may be, we cannot take away rights that Congress gave.[3]

Affirmed.

FAHY, Circuit Judge (dissenting).

The case is an appropriate one in which to set out the reasons for a dissent. This requires discussion of the particular provision upon which the court relies, both in its setting as part of a larger statutory retirement plan and in its language.

Prior to 1940 there were three statutory retirement categories, under none of which could appellee have been retired due to being at least 55 years of age, though not yet 60, with at least 25 years service. The three categories may be described briefly as follows: (1) permanent disability through injury or disease incurred in line of duty, § 4–507, D.C. Code (1951); (2) 55 years of age, 25 years service, permanent incapacity due to any cause, and written application for retirement approved by the Commissioners, § 4–507; and (3) 60 years of age, § 4–507. Retirement under any one of these provisions would entitle the officer to compensation in an amount equal to 50 per centum per annum of his salary at the date of retirement.

As to the first category the statute leaves no discretion in the Commissioners; it provides that the officer "shall * * * be retired"; as to category second, also, he "shall * * * be retired", though as noted his application must be approved by the Commissioners. This approval, however, presumably must be given if the conditions specified are met, so here too no discretion resides in the Commissioners. But as to the third category, where only age is specified, though length of service is necessarily involved, he shall be retired "in the discretion of the said Commissioners". Congress has expressly repealed none of these provisions.

The provision relied upon by appellee was added in 1940 to those above described and is now also a part of the Code, § 4–508, D.C.Code (1951). The question in the end is whether it leaves to the Commissioners any discretion, as in the third category above mentioned, or confers upon the officer an absolute right to retirement as in the first and perhaps second categories, both of which, however, apply only when the officer is incapacitated.

Concededly the matter is not free of all doubt, but when we consider this 1940

---

3. The plaintiff's refusal to testify occurred in 1952. In 1953 Congress enacted that an officer or employee, or former officer or employee, of the District of Columbia "who refuses" on the ground of self incrimination to testify on certain matters "shall forfeit" pension rights among other things. Act of June 29, 1953, 67 Stat. 108, § 409. This applies, of course, to subsequent refusals, not to previous ones.

addition in its place in the whole plan, as well as its permissive language, I think it reasonably clear that it adds a discretionary fourth category, without repealing any previously existing provision.

The 1940 provision has to do only with age, at least 55 years, and length of service, at least 25 years. Under the second category above an officer of that age and length of service cannot be retired, even if he requests it, unless he is also permanently incapacitated. Yet the court now holds that by reason of the 1940 provision one of this age and length of service, though not incapacitated, must be retired if he so elects. This brings about repeal by implication of the incapacity feature theretofore essential to such absolute right. The law does not favor such implied repeal which infers a legislative intent inconsistent with that which has been expressed. Such inference should not be indulged if effect can be given to the later provision consistently with maintaining the earlier in force. United States v. Borden Co., 308 U.S. 188, 198–199, 60 S.Ct. 182, 188, 84 L.Ed. 181.[1] This can be easily accomplished by reading the 1940 addition to permit the exercise of some discretion by the Commissioners when the officer elects to retire at 55 years of age with 25 years of service. This is a reading to which the language naturally lends itself, as pointed out more fully *infra*. The purpose of the provision is to give a member of the force a right when he becomes 55, with 25 years of service, to apply for retirement—a right not before available unless he was either incapacitated or 60 years of age—and then to be retired in the discretion of the Commissioners— a status also not theretofore available to him. If we go beyond this and construe the provision to compel approval by the Commissioners of the application the earlier provision requiring incapacity to bring about that result, though not expressly repealed, is read out of the statute by implication.

I might observe at this point that if an officer elects under the 1940 provision to seek retirement his request should be approved unless good cause to the contrary appears. This seems clear. The statute evidences a Congressional attitude favorable to retirement at 55 with 25 years service if desired by an officer, while at the same time not compelling the Commissioners to grant the request unless the officer is incapacitated as well.

An analysis of the 1940 provision in relation also to the third category covering an officer 60 years of age indicates again that it was not intended to drain all discretion from the Commissioners. As we have seen the third category explicitly leaves the question of retirement at the age of 60 to the discretion of the Commissioners. This discretion is now held to be eliminated when the 60 year old officer has had 25 years of service and applies for retirement. Of course he could apply at 60 under the older provision, but this would not destroy the Commissioners' discretion. And one so applying who has reached 60 is more likely to have served 25 years than one who is only 55. But if he applied at 60 with 25 years service, and was not incapacitated, he was not obliged to be retired. In conferring a new right to apply earlier and be retired, the 1940 provision need not be

---

[1]. In this case Chief Justice Hughes said for the Court:

"It is a cardinal principle of construction that repeals by implication are not favored. When there are two acts upon the same subject, the rule is to give effect to both if possible. United States v. Tynen, 11 Wall. 88, 92 [20 L.Ed. 153]; Henderson's Tobacco, 11 Wall. 652, 657 [20 L.Ed. 235]; General Motors Acceptance Corp. v. United States, 286 U.S. 49, 61, 62 [52 S.Ct. 468, 472, 76 L.Ed. 971]. The intention of the legislature to repeal 'must be clear and manifest.' Red Rock v. Henry, 106 U.S. 596, 601, 602 [1 S.Ct. 434, 439, 27 L.Ed. 251]. * * * There must be 'a positive repugnancy between the provisions of the new law, and those of the old; and even then the old law is repealed by implication only *pro tanto* to the extent of the repugnancy.' See, also, Posadas v. National City Bank, 296 U.S. 497, 504 [56 S.Ct. 349, 352, 80 L.Ed. 351]."

construed to eliminate this discretion left with the Commissioners even when the applicant has reached 60.

Unless therefore the language of the 1940 provision compels a different result it should simply take its place as granting a new right to an officer to apply for and, in the Commissioners' discretion, to obtain retirement when he has reached 55 years of age with 25 years of service but is not incapacitated. He need not wait until he is 60 to seek retirement. And unless 60 he cannot unwillingly be forced into retirement. He must seek it himself. Thus interpreted the statute as a whole takes the only form thus far clearly delineated by Congress, with its several provisions reconciled one with the other.

A more direct analysis of the language of the 1940 provision itself demonstrates that it does not compel a different result. Not only so; I find in such analysis further support for a discretion in the Commissioners. In the first place the provision is phrased in the language of discretion, not that of compulsion. The officer "may, at his election, be retired".[2] This does not say and I think it does not mean that "he may elect to be retired" in the sense that he may control the action to be taken by the Commissioners as a result of his choice. As in other parts of the statute two main factors of action are involved in the retirement process, one that of the officer, the other that of the Commissioners. The election, or application, or choice, of the former, does not compel favorable action by the latter, unless the officer is incapacitated, in which event the statute directs that he "shall * * * be retired".[3] I am unable to agree that when Congress says he "may, at his election, be retired", the word *may*, instead of *shall*, was chosen because an election was given. That was taken care of by the words "at his election", referring to his own action. It

remained to describe the action available to the Commissioners. Permissive and not mandatory language was chosen by Congress. This explains the choice of *may*. It is part of the verb applicable to the Commissioners' action—"may * * * be retired" by the Commissioners, not "shall" or "must" be retired by them. To hold otherwise as the court does is to say, unnecessarily, that there is no place in the plan set up by Congress for the exercise of any discretion by the Commissioners in carrying out their supervisory responsibility. The need, at the time the application is made, for retention in service for a while longer of all able-bodied officers 55 years of age with 25 years service, must be disregarded. Charges, however grave, which have not yet eventuated in suspension or dismissal, though under investigation, must be disregarded. I do not think the statute either says or requires this. In this connection it should be noted also that under § 4–510, D.C.Code (1951), all cases "rendered necessary or expedient" are required to be considered by the Police and Firemen's Retiring and Relief Board, which shall submit a report to the Commissioners, who are vested with final authority to approve, disapprove or modify the findings of the Board.

If in the normal processing of an application under these procedures good cause appears for its rejection or postponement, I think the statutory plan as well as the language of the particular provision authorizes rejection or postponement, assuming incapacity is not involved. The Commissioners may not be arbitrary, however, and their action is subject to appropriate judicial review. Indeed, the particular provision in question, as I have already said, is indicative of a Congressional intention that ordinarily one who elects to be retired at 55 years of age after 25 years service shall

2. The further provision that he shall then be entitled to retirement compensation applies, as I read the statute, only if he is retired.

3. See Rudolph v. Mosheuvel, 37 App.D.C.

76, referred to in the opinion of the court, decided under earlier provisions applicable to disability incurred in line of duty.

have his request granted. But if valid reason pertinent to the retirement problem, such as good ground for dismissal, appears during processing, and leads the Commissioners to reject the application I think their action is lawful.[4]

The following language of the court in MacIntyre v. Retirement Board, 42 Cal. App.2d 734, 736, 109 P.2d 962, 964, where the officer had reached the retirement age, with sufficient years of service, aptly expresses the views I would here apply:

> " * * * The filing of the application does not *ipso facto* retire the applicant. It is necessary that an order of retirement be duly made. Up to that time the police officer, whether under suspension or in actual service, is under the control and jurisdiction of the police commission. If, prior to an order of the retirement board, he is dismissed upon charges of conduct unbecoming an officer, he is not entitled to 'a pension' as that term is used in the charter."

The construction I give leaves the entire statute in effect as an internally consistent and cohesive plan, as follows: 1. One permanently disabled in line of duty has the right to be retired. No discretion resides in the Commissioners in such a case. 2. One permanently incapacitated for any cause, who is 55 years of age with 25 years of service, and applies for retirement, shall likewise be retired. Here again there is no discretion. 3. One 60 years of age may be forced into retirement in the discretion of the Commissioners whether or not he requests it. 4. One 55 years of age with 25 years of service, but not incapacitated, may not be retired against his will, but if he so elects he may be retired in the discretion of the Commissioners. Ordinarily his request should be granted but it may be denied for good cause.

Appellee falls in group 4 above. Accordingly I would reverse and remand, without prejudice to appellee if he so desires to contest on other grounds the validity of his dismissal.

4. As pointed out in the majority opinion the Commissioners may in their discretion reduce or discontinue the retirement pay as provided in § 4-513, D.C.Code (1951), when there has been conviction of a crime involving moral turpitude or when it appears to their satisfaction on evidence that the person is an habitual drunkard or guilty of lewd or lascivious conduct. These provisions permitting the Commissioners to reduce or discontinue for specific reasons the pecuniary benefits of retirement even after it has been granted, are altogether consistent with an intention on the part of Congress that the Commissioners may exercise discretion in rejecting an application before it is granted, for conduct which would warrant dismissal.