In re Rene WHISAKER, Respondent.

Civ. A. No. 4171-55.

United States District Court
District of Columbia.

Oct. 19, 1955.

Leo A. Rover, U. S. Atty., Alfred Burka, Asst. U. S. Atty., Washington, D. C., for petitioner.

H. Eugene Bryan, Washington, D. C., for respondent.

PINE, District Judge.

This proceeding involves whether the recently enacted statute providing for the treatment of users of narcotics [1] includes within its coverage a juvenile under the age of 18 years who has been committed by the Juvenile Court to the Department of Public Welfare.

The Act, hereinafter sometimes referred to as the Drug Users' Act, provides that its purpose is to protect the health and safety of the people of the District of Columbia from the menace of drug addiction and to afford an opportunity to the drug user for rehabilitation, but that it is not to be used as a substitute for punishment for crime committed by drug users.

The Act prescribes in brief the following procedures:

Whenever it shall appear to the United States Attorney that any person within the District, with certain exceptions hereinafter referred to, is a drug user, he may file in this court a statement to that effect, Sec. 3(a), and thereupon the court shall order the person (referred to in the Act as the patient) to appear before the court and Sec. 4, appoint two physicians to examine him. They are required thereafter to file a report, giving their conclusions as to whether the patient is a drug user Sec. 6, and if the report of either physician is in the affirmative, the court shall conduct a hearing, Sec. 7, and determine the fact in this regard, Sec. 8. If the court determines that the patient is a drug user, he may commit him to a hospital designated by the patient or the Commissioners of the District and approved by the court, to be confined there for rehabilitation. The head of the hospital is required to submit reports within reasonable periods but no longer than six months after commitment and for successive intervals thereafter, and to state therein reasons why the patient has not been released, Sec. 9. When the head of the hospital finds that the patient appears to be no longer in need of rehabilitation, or has received maximum benefits, he shall give notice to the court, and the patient shall be delivered to the court for such further action as the court may deem necessary and proper, Sec. 10. If the court finds that the patient is no longer in need of treatment, or has received maximum benefits, it shall order the patient released, Sec. 10.

The Act excepts certain categories from its operation by providing that the United States Attorney "shall *not* file a statement * * * with respect to any person who is charged with a criminal offense, whether by indictment, by information, or who is under sentence for a criminal offense * * *." Sec. 3(b), (Italics supplied).

It will thus be seen that the Act, read literally, covers "any person" other than those charged with a criminal offense or under sentence for a criminal offense. It has no other exclusions.

In this case, the United States Attorney filed a statement that respondent, a 17-year-old female, had been addicted to the use of narcotic drugs, and prayed that she be brought before the court and that the procedures of the statute above outlined be carried forward. Pursuant thereto, she was brought before the court, whereupon, through counsel, she moved for a dismissal of the proceedings on the ground that exclusive jurisdiction over her was vested in the Juvenile Court. She came to court in the custody of agents of the Department of Public Welfare, having been committed to that agency by the Juvenile Court after being charged with violating the law and habitually so deporting herself as to injure and endanger herself and others. The law violation was a misdemeanor.

Respondent's contention, therefore, requires an examination of the Juvenile

[1]. Act approved June 24, 1953, Secs. 24–601 to 24–615, D.C.Code 1951, as amended.

Court Act,[2] enacted long prior to the Drug Users' Act. That Act provides, Sec. 11–906, that it "shall apply to any person under the age of 18 years—(1) Who has violated any law; or * * * (4) Who habitually so deports himself as to injure or endanger himself or the morals or safety of himself or others * * *." It further provides that the Juvenile "court shall have original and exclusive jurisdiction of all cases and in proceedings: (a) Concerning any child coming within" its terms and provisions, Sec. 11–907, D.C.Code 1951.

It will be seen that the Juvenile Court Act applies to this respondent and that the Juvenile Court has exclusive jurisdiction over her, under that Act. Further, it will be seen that that court has assumed its jurisdiction, and pursuant to its statutory authority has committed respondent to the Department of Public Welfare.[3] Jurisdiction, once having been obtained by the Juvenile Court, continues until the child reaches 21 years of age unless discharged prior thereto.[4]

The foregoing statement brings immediately into focus the question whether the Drug Users' Act has repealed or modified the Juvenile Court Act in respect of juveniles who are addicted to drugs. This requires careful scrutiny of the Drug Users' Act to ascertain the intent of Congress, and permits, in this case I believe, a consideration of its legislative history. The Act is made applicable to "any person" and does not exclude juveniles expressly, although it does exclude certain other categories as above set forth. A reasonable inference from the statute, standing alone, would therefore permit a construction that juveniles were intended to be included within its ambit. Turning to its legislative history, there is further support for this inference. As the bill first emerged from the House of Representatives, it excluded from its operation "any person who is charged with a criminal offense * * * by a proceeding in the Juvenile Court * * *." But when it reached the Senate for consideration, this language was stricken, and it passed the Senate without this exclusionary provision. Thereafter, the House agreed to the Senate amendment, and the bill became law without the provision. Although this language would appear to be inept, in that a proceeding in the Juvenile Court is not a criminal proceeding,[5] its elimination would likewise tend to establish the intent of Congress to include juveniles within its provisions by failing to exclude them after having the matter brought expressly to its attention.

There is only one other reference to this point in the legislative history which my research has been able to uncover, and it grows out of the testimony of the United States Attorney before the Senate Committee on the District of Columbia when the House bill was before it for consideration. In his testimony, he referred to the exclusionary language which later was stricken, and stated that it "would seem to indicate that probably we could bring into the District Court a person under 18 years of age, because the words 'Juvenile Court' appear in there." He also stated that, if Congress wished to provide for the inclusion of juveniles, it would require an amendment to the Juvenile Court Act. There was further colloquy in which it was mentioned that there were very few narcotic addicts under 18 and that the matter was not one to give concern.

I am not clear as to his contention, but assume that it contemplates the view that, by *excluding* from the operation of the Act the so-called "criminal" juveniles, the inference would be that "noncriminal" juveniles were *included*. If that be correct, it would seem that, with

2. Sec. 11–901 et seq., D.C.Code 1951.

3. "If the court shall find that the child comes within the provisions of this chapter [the Juvenile Court Act], it may by order * * *. Commit the child to the Board [Department] of Public Welfare", Sec. 11–915, D.C.Code 1951.

4. Sec. 11–907, D.C.Code 1951.

5. Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905.

other categories expressly excluded the subsequent elimination by Congress of the language *excluding* "criminal" juveniles would raise the inference that all juveniles were *included.* However, as above stated, he expressed the further view that the inclusion of juveniles would require an amendment of the Juvenile Court Act. In that case, if it be assumed that Congress adopted his thinking, the inference would be that the intent was to exclude them from the Act. I assume, however, that he does not presently entertain such view, inasmuch as he has instituted this proceeding; and I am of the opinion that the inference is stronger that Congress, by omitting all reference to juveniles in its *exclusionary* provisions, intended to *include* them within the operation of the Act. To me it is unthinkable that Congress intended to include non-criminal adults and exclude children, likewise non-criminal either actually or by operation of law,[6] and thereby deprive them, as well as society, of the Act's beneficent and protective provisions, both present and prospective.

 Being therefore of the opinion that Congress intended to include juveniles within the operation of the Drug Users' Act, and that the Act should be so construed, the next step is whether this impels the conclusion that the Juvenile Court Act has been impliedly repealed in so far as its jurisdiction over juveniles who are addicted to the use of narcotics is concerned. Implied repeals of prior Acts are not favored in the law, and they are not countenanced unless the later Act is in irreconcilable conflict with the earlier one or unless the later statute covers the whole ground occupied by the earlier and is clearly intended as a substitute for it and the intention of the legislature to repeal is clear and manifest. Town of Red Rock v. Henry, 106 U.S. 596, 1 S.Ct. 434, 27 L.Ed. 251. Applying this criterion I would have difficulty in finding an implied repeal of the jurisdiction of the Juvenile Court over these juveniles. But I do not believe it is necessary to reach a head-on collision of that sort. In United States v. Burroughs, 289 U.S. 159, 164, 53 S.Ct. 574, 77 L.Ed. 1096, in referring to implied repeals, the Supreme Court held that, "if effect can reasonably be given to both statutes, the presumption is that the earlier is intended to remain in force." On the basis of that authority, I reach the conclusion that reasonable effect can be given to the Drug Users' Act by finding that it includes juveniles within its operation, without disturbing the jurisdiction of the Juvenile Court; and my reasons are as follows:

 The Drug Users' Act does no more than provide compulsory procedure for the treatment of those addicted to narcotics. It is not a criminal statute, Sec. 12, Drug Users' Act, and when it covers with its cloak a juvenile under the jurisdiction of the Juvenile Court and places him in an institution for treatment, it does no more than change the "custody" of the juvenile under commitment, and does not impair the Juvenile Court's "jurisdiction." When the treatment has been concluded, and rehabilitation from the addiction or maximum benefits have been accomplished, the juvenile will then be released by this Court back to the custody whence he came—in this case, the Department of Public Welfare—and continue in its custody under the jurisdiction of the Juvenile Court. In other words, the custody of the juvenile will be changed for a limited time from the Department of Public Welfare to an institution designated under the Drug Users' Act, and that is all that will transpire. Except for procedure, I see little difference between the transfer of custody for treatment in this case and the transfer of custody for treatment to the D. C. General Hospital on account of a physical ailment, authority for which is unquestioned. In that case, the juvenile would remain in the hospital until cured, and then would be released back to the custody of the Department of Public Welfare. At present, under the law, the Department of Public Welfare has no authority itself to com-

6. Thomas v. United States, supra.

pel transfer of custody of one committed to its care, to a Federal institution for treatment for narcotics addiction, and the Drug Users' Act, by including juveniles within its scope, provides this additional tool for the rehabilitation of the juvenile and the protection of society. It may be added that the Department of Public Welfare and the Juvenile Court authorities have interposed no objection, but as I understand it, have invited the utilization of the Drug Users' Act.

I therefore reach the conclusion that the Drug Users' Act does not impliedly repeal the Juvenile Court Act in respect of its "jurisdiction" over the juveniles included within its scope, but is simply a "custodial" device for the purpose of carrying out the statutory design of the former, which within its sphere runs parallel with that of the Juvenile Court Act within its sphere, namely, rehabilitation and protection of society.

Accordingly, arrangements will be made for the production of the juvenile before me, with all due expedition, in order that the procedures outlined by the Drug Users' Act can be put into effect, and motion to dismiss petition will be denied.