(Reap. Dec. 9212)

ELOF HANSSON, INC. *v.* UNITED STATES

Entry No. 799887 1/2.

(Decided August 19, 1958)

*Sharp & Bogan (James R. Sharp* and *Raoul Berger* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney) for the defendant.
*Robert C. Keck* as *amicus curiae.*

RAO, Judge: On August 26, 1954, the Acting Secretary of the Treasury, proceeding under the authority conferred by the provisions of the Antidumping Act of 1921,[1] 19 U. S. C. § 160 (May 27, 1921, ch. 14, § 201, 42 Stat. 11; June 17, 1930, ch. 497, Title IV, § 651 (d) (5), 46 Stat. 763), made the following determination (89 Treas. Dec. 197, T. D. 53567):

### Antidumping—Hardboard from Sweden

The Acting Secretary of the Treasury makes a finding of dumping with respect to hardboard from Sweden

TREASURY DEPARTMENT,
*Washington, D. C., August 26, 1954.*

To Collectors of Customs and Others Concerned:

After due investigation, in accordance with the provisions of section 201 of the Antidumping Act, 1921 (19 U. S. C. 160), I find that the industry manufacturing

---

[1] Insofar as here pertinent, the Antidumping Act of 1921 provides as follows:

DUMPING INVESTIGATION

SEC. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

\* \* \* \* \* \* \*

SPECIAL DUMPING DUTY

SEC. 202. (a) That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, if the purchase price or the exporter's sales price is less than the foreign market value (or, in the absence of such value, than the cost of production) there shall be levied, collected, and paid, in addition to the duties imposed thereon by law, a special dumping duty in an amount equal to such difference.

\* \* \* \* \* \* \*

DUTIES OF APPRAISERS

SEC. 209. That in the case of all imported merchandise, whether dutiable or free of duty, of a class or kind as to which the Secretary has made public a finding as provided in section 201, and as to which the appraiser or person acting as appraiser has made no appraisement report to the collector before such finding has been so made public, it shall be the duty of each appraiser or person acting as appraiser, by all reasonable ways and means to ascertain, estimate, and appraise (any invoice or affidavit thereto or statement of cost of production to the contrary notwithstanding) and report to the collector the foreign market value or the cost of production, as the case may be, the purchase price, and the exporter's sales price, and any other facts which the Secretary may deem necessary for the purposes of this title.

hardboard in the United States is likely to be injured by reason of the importation into the United States of hardboard from Sweden, and that hardboard from Sweden is being sold and is likely to be sold in the United States at less than its fair value. (Sec. 201, 42 Stat. 11; 19 U. S. C. 160.)

(643.3)

H. CHAPMAN ROSE,
*Acting Secretary of the Treasury.*

[Filed with the Division of the Federal Register September 2, 1954, 8:45 a. m.]

As a consequence thereof, and in accordance with the provisions of said Antidumping Act, the appraiser, in making his return of value for the instant importation of hardboard from Sweden, determined the appropriate foreign market value and the purchase price, for the eventual imposition, by the collector, of special dumping duties. This appeal for reappraisement challenges the validity of the appraiser's return of value as predicated upon an alleged invalid finding of dumping by the Secretary of the Treasury. Specifically, it is asserted that—

1. The Secretary failed to follow the procedure prescribed in Section 4 of the Administrative Procedure Act (5 U. S. C. Sec. 1003) (hereinafter APA); and

2. The Secretary exceeded the authority conferred upon him by the Anti-Dumping Act.

The following facts have been stipulated:

1. That the Acting Secretary of the Treasury on August 26, 1954, made, issued and published Treasury Decision 53567, 89, Treas. Dec. 197, referred to herein as the Finding of Dumping, and published same in the Federal Register September 3, 1954, (19 F. R. 5631). Thereafter the Appraiser of Merchandise at New York, N. Y., determined the "foreign market value" and the "purchase price" under the provisions of the Antidumping Act of 1921 with respect to hardboard exported from Sweden on November 21, 1953, and entered at New York, N. Y., on December 3, 1953, in Entry No. 799887-1/2 in Reappraisement No. 262982–A.

\*　　\*　　\*　　\*　　\*　　\*　　\*

2. That if said Finding of Dumping is held to be valid by the Court, it is agreed that the determination by the appraiser as to the amounts of "foreign market value" and "purchase price" with regard to the instant entry are correct.

\*　　\*　　\*　　\*　　\*　　\*　　\*

3. That the validity of said Finding of Dumping affects several hundred entries by numerous importers of hardboard exported from Sweden during a period exceeding three years, involving in the aggregate many thousands of dollars of so-called "special dumping duties."

\*　　\*　　\*　　\*　　\*　　\*　　\*

4. That the investigation conducted by the Secretary of the Treasury culminating in the said Finding of Dumping was commenced on or about March 31, 1953.

\*　　\*　　\*　　\*　　\*　　\*　　\*

5. That on October 15, 1953, the Acting Commissioner of Customs, acting in accordance with properly delegated authority, directed appraisement to be withheld on all unappraised entries of hardboard from Sweden and this importer and others received a notice of such withholding on Customs Form No. 6459 as to entries unappraised as of said date and succeeding entries; that such withholding was continued until the issuance of said Finding of Dumping on August 26, 1954.[2]

\* \* \* \* \* \* \*

6. That during the course of said investigation Treasury Department representatives went to Sweden and elicited information from Swedish manufacturers of hardboard and others in Sweden.

\* \* \* \* \* \* \*

7. That a notice of appraisement on Customs Form 4301 with regard to the instant entry was mailed to plaintiff on September 9, 1955, and that the importer filed an appeal with the Collector of Customs at New York on September 23, 1955, said appeal being dated September 19, 1955.

\* \* \* \* \* \* \*

8. That before May 5, 1953, Herbert Geller, an Examiner of Merchandise in the office of the United States Appraiser of Merchandise at New York, N. Y., discussed with representatives of Elof Hansson, Inc., the plaintiff, the fact that the Treasury Department had received a complaint alleging dumping of hardboard from Sweden, that the Treasury Department was making an investigation and desired certain data from Elof Hansson, Inc.'s Swedish suppliers. That under a covering letter, dated May 5, 1953, the said Elof Hansson, Inc. submitted to the said Appraiser the analytical data from Sweden, which had been requested by Mr. Geller. [Defendant's exhibit A.]

At this point, it becomes pertinent to set forth the provisions of the Administrative Procedure Act of 1946, bearing upon the issues in this case (5 U. S. C. §§ 1001 and ff: June 11, 1946, C. 324, §§ 2, 3, 4, and 10; 60 Stat. 236, as amended)—

§ 1001. Definitions.

\* \* \* \* \* \* \*

(a) Agency.

"Agency" means each authority (whether or not within or subject to review by another agency) of the Government of the United States other than Congress, the courts, or the governments of the possessions, Territories, or the District of Columbia. \* \* \*

\* \* \* \* \* \* \*

(c) Rule and rule making.

"Rule" means the whole or any part of any agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or to describe the organization, procedure, or practice requirements of any agency and includes the approval or prescription for the future of rates, wages, corporate or financial structures or reorganizations thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs, or

---

[2] It appears from the record that customs Form No. 6459, notice of withheld appraisement, was addressed to every importer of hardboard from Sweden between October 15, 1953, and August 26, 1954. [Defendant's exhibits D1, D2, and E1.]

accounting, or practices bearing upon any of the foregoing. "Rule making" means agency process for the formulation, amendment, or repeal of a rule.

(d) Order and adjudication.

"Order" means the whole or any part of the final disposition (whether affirmative, negative, injunctive, or declaratory in form) of any agency in any matter other than rule making but including licensing. "Adjudication" means agency process for the formulation of an order.

\* \* \* \* \* \* \*

§ 1003. Rule making.

Except to the extent that there is involved (1) any military, naval, or foreign affairs function of the United States or (2) any matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts—

(a) Notice; publication and contents.

General notice of proposed rule making shall be published in the Federal Register (unless all persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law) and shall include (1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved. Except where notice or hearing is required by statute, this subsection shall not apply to interpretative rules, general statements of policy, rules of agency organization, procedure, or practice, or in any situation in which the agency for good cause finds (and incorporates the finding and a brief statement of the reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

(b) Procedures.

After notice required by this section, the agency shall afford interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity to present the same orally in any manner; and, after consideration of all relevant matter presented, the agency shall incorporate in any rules adopted a concise general statement of their basis and purpose. Where rules are required by statute to be made on the record after opportunity for an agency hearing, the requirements of sections 1006 and 1007 of this title shall apply in place of the provisions of this subsection.

\* \* \* \* \* \* \*

§ 1004. Adjudications.

In every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing, \* \* \*.

(a) Notice of hearing and issues.

Persons entitled to notice of an agency hearing shall be timely informed of (1) the time, place, and nature thereof; (2) the legal authority and jurisdiction under which the hearing is to be held; and (3) the matters of fact and law asserted. In instances in which private persons are the moving parties, other parties to the proceeding shall give prompt notice of issues controverted in fact or law; and in other instances agencies may by rule require responsive pleading. In fixing the times and places for hearings, due regard shall be had for the convenience and necessity of the parties or their representatives.

(b) Procedure.

The agency shall afford all interested parties opportunity for (1) the submission and consideration of facts, arguments, offers of settlement, or proposals

of adjustment where time, the nature of the proceeding, and the public interest permit, and (2) to the extent that the parties are unable so to determine any controversy by consent, hearing, and decision upon notice and in conformity with sections 1006 and 1007 of this title.

\* \* \* \* \* \* \*

§ 1009. Judicial review of agency action.

Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion—

\* \* \* \* \* \* \*

(e) Scope of review.

\* \* \* In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error. (June 11, 1946, ch. 324, § 10, 60 Stat. 243.)

That notice of intention to conduct a dumping investigation with respect to hardboard from Sweden was never published in the Federal Register is not a matter here in dispute. What is disputed are the consequences flowing from such omission, and the purpose and effect of the various provisions of the Administrative Procedure Act, hereinabove quoted, as related to the Secretary's finding of dumping.

Upon the part of the plaintiff, it is contended that the office of the Secretary of the Treasury is an agency subject to the provisions of the Administrative Procedure Act; that the Secretary's finding of dumping is rule making, rather than adjudication; and that statutory essentials to the validity of rule making are antecedent publication in the Federal Register of intention to promulgate, and inclusion within the publication of the ultimate finding of the basis and purpose of the rule.

Counsel for the defendant and *amicus curiae* urge that findings of the Secretary of the Treasury under the Antidumping Act of 1921 are not subject to the provisions of the Administrative Procedure Act; that if the court should construe the latter act to the contrary, dumping findings are adjudication rather than rule making wherefore published notice of proposed investigation is not mandatory; that, in any event, the notice requirement of proposed rule making is a technicality satisfied by the fact of actual notice to all interested parties via the medium of notice of withheld appraisements; and that plaintiff, and other importers having been afforded an opportunity to participate in the Secretary's investigations, no prejudicial error resulted from his failure to publish notice of proposed rule making.

Of course, if the Secretary of the Treasury, in the exercise of his functions under the Antidumping Act of 1921, *supra,* is not subject to the limitations imposed by the Administrative Procedure Act, no need arises for characterization of his actions within the definitions prescribed in the latter enactment. Whether it be rule making or

adjudication, the validity of his act could not be tested by statutory requirements with which he need not comply.

By the terms of the Antidumping Act, the Secretary of the Treasury was given broad and extensive powers. He was authorized to make his finding "after such investigation as he deems necessary" and to publish that finding "to the extent he deems necessary." The scope of his investigation, the methods he pursued, indeed the necessity for investigation, in the first instance, or eventual promulgation of his finding, were matters not circumscribed but left to his complete and absolute discretion.

Concerning the extent of his powers, our appellate court had this to say in the case of *Kleberg & Co. (Inc.)* v. *United States*, 21 C. C. P. A. (Customs) 110, T. D. 46446:

* * * Under the statute, the Secretary was not confined to any particular source of information or means of investigation. Furthermore, such information as he might obtain was not open to public inspection, unless he felt that the public interest so required. *Norwegian Nitrogen Products Co.* v. *United States*, 20 C. C. P. A. (Customs) 27, T. D. 45674, affirmed in 288 U. S. 294. [53 S. Ct. 350, 77 L. ed. 796.]

It must be remembered, however, that this delegation of power was not accompanied by any authority to fix or impose the compensatory duties necessary to equalize competitive prices. By his finding, the Secretary merely sets in motion the procedures outlined by Congress for the ascertainment, by the appraiser, of the appropriate value and the subsequent assessment by the collector of the special dumping duties. *C. J. Tower & Sons* v. *United States*, 21 C. C. P. A. (Customs) 417, T. D. 46943.

No rights are defined, no obligations are incurred, except and unless the appraiser in his return of value finds that the importer's purchase price is less than the applicable foreign market value, or, in the absence thereof, the cost of production of the involved merchandise. Notwithstanding the Secretary's finding of dumping, dumping duties attach only when the statutory conditions of exporter's sales price (or purchase price) being less than foreign market value, have been fulfilled. *United States* v. *C. J. Tower & Sons et al.*, 61 Treas. Dec. 497, T. D. 45495.

In this way, the congressional plan "to equalize competitive conditions between the exporter and American industries affected, * * * and to prevent dumping and the consequent destruction of domestic industries," (*C. J. Tower & Sons* v. *United States, supra*) was accomplished. Although it involved the delegation of unfettered discretion in the Secretary of the Treasury in the making of his finding, it also envisioned the protection of such rights as importers possess.

by making available to them the ordinary procedures of appeal for reappraisement, and of protest. (§ 210, Antidumping Act of 1921.)

Clearly, it was not within the intention of the Congress when it enacted the Antidumping Act of 1921 that the investigative procedures, upon suspicion of dumping, be open to public scrutiny, or conditioned upon public participation. The language employed in the delegation of power plainly states otherwise.

Under the provisions of the Administrative Procedure Act, *supra*, every action of a governmental agency, falling within its self-containing definitions of "rule" and "rule making," is expressly made subject to the requirement of publication of notice of intention to promulgate wherein must be set forth "a statement of the time, place, and nature of public rule making proceedings," and to the necessity of affording interested persons an opportunity to participate in the proceeding. (*Supra*, § 1003 (a) and (b).)

Assuming *arguendo* that the action of the Secretary of the Treasury in making a "Finding of Dumping" be construed as rule making, it is at once apparent that his discretionary authority, theretofore absolute, to make such investigations to the extent and in the manner he deems necessary, has been abrogated. Thereafter, he would become subject to the compulsive requirement of giving notice of his intention to conduct an injury investigation and of affording interested parties an opportunity to present their views.

The two grants of power are in direct conflict. The one purports to cut down what the other has conveyed without restraint. That Congress can so declare is elementary. *Blumenthal et al.* v. *United States*, 88 F. (2d) 522; *in re Whisaker*, 134 F. Supp. 864. Yet, repeals by implication are not favored, and nothing in the extensive history of the Administrative Procedure Act, as outlined in the reports submitted by the respective Judiciary Committees of the Senate and of the House of Representatives (Sen. Rept. 752, 79th Cong. 1st Sess.; H. Rept. 1980, 79th Cong. 2d Sess.), the statements of their respective spokesmen (Senator McCarran; Representative Walter) and other data contained in Senate Document No. 248, 79th Congress, Second Session, and as recited in the cases of *Wong-Yang Sung* v. *McGrath, Attorney General*, 339 U. S. 33, *Willapoint Oysters, Inc.* v. *Ewing*, 174 F. (2d) 676, or in the act itself, suggests such a purpose.

The Antidumping Act of 1921 was amended by provisions, contained in the Customs Simplification Act of 1954, transferring the injury finding functions to the United States Tariff Commission. In the course of the legislative progress of the latter bill, known as H. R. 10009, 83d Congress, the Ways and Means Committee of the House

of Representatives issued its report No. 2453, wherein is contained the following statement:

> The Committee expects, of course, that the Commission will give interested parties notice of the institution of an injury investigation and will afford them reasonable opportunity to present their views at public hearings.

Here is no recognition of a compulsory requirement dictated by previously enacted law, but merely a statement of reasonable expectation that notice and hearing will be afforded to those who are concerned by the proceedings. Had there been congressional understanding of the application of the Administrative Procedure Act to dumping investigations, some expression of a much more imperative character would seem indicated.

In a bill presently pending before the Congress (H. R. 6006, 85th Cong.)[3] to further amend the Antidumping Act of 1921, provision is made for publication by the Tariff Commission and the Secretary of the Treasury of statements of the basis of their actions. The House Ways and Means Committee, in its report to accompany the bill (H. Rept. No. 1261), commented on said provision as follows:

> Provision is made by your committee's bill for *mandatory* public notice when there is reason to believe or suspect sales of imported merchandise at a dumping price, and *mandatory* public notice by the Treasury Department and the Tariff Commission of their decisions in dumping cases, whether affirmative or negative, with reasons therefor. [Italics supplied.]

The court is mindful of the fact that the intention of Congress in the enactment of a given statute may not be divined from expressions of Congress in connection with subsequent amendatory legislation. *United States* v. *United Mine Workers of America*, 330 U. S. 258. Especially is this so in the case of comments on bills which have not as yet become law. *Jefferson* v. *United States*, 178 F. 2d 518.

Nevertheless, they are illuminating, and suggest an apparent understanding on the part of Congress that the rule-making provisions of the Administrative Procedure Act were inapplicable to dumping proceedings.

So to construe the provisions of the Administrative Procedure Act is to resolve the conflict which otherwise obtains between it and the Antidumping Act of 1921. To accept the alternative urged by the plaintiff is to create an inconsistency between the two statutes, having the effect of repeal by implication. There is no irresistible evidence either in the language employed by Congress in the 1946 act, or in the available commentaries thereon, that such a result was intended. Insofar, then, as the Secretary's finding of dumping is deemed to be rule making, it is the considered opinion of the court that it is not subject to the provisions of the Administrative Procedure Act.

---

[3] Since the writing of this opinion, this bill has been passed by both Houses of Congress.

If, moreover, the Secretary's action be held to be adjudicatory in nature, the necessity of an agency hearing upon notice is obviated by the language of section 1004, *supra*. By its terms, section 1004 applies to "adjudication required by statute to be determined on the record after opportunity for an agency hearing, * * *." The statute authorizing the Secretary of the Treasury to make an injury investigation and to issue his finding thereon is without such requirement. *Kreutz* v. *Elting*, 3 F. Supp. 364. As stated in *United States* v. *Cottman Co. et al.*, 190 F. 2d 805, certiorari denied, 342 U. S. 903:

* * * This section, however, merely prescribes the procedure to be followed in cases falling within the coverage of the Act. Section 10 of the Act, 5 U. S. C. A. § 1009, is the section providing for judicial review; and agency action committed by law to agency discretion is expressly excepted by this section from review under the Act. As we have seen, the remission of duty here was committed to the discretion of the Secretary, and consequently the Administrative Procedure Act can have no application.

Thus, either view of the action of the Secretary of the Treasury in making a finding of dumping leads unerringly to the conclusion that the provisions of the Administrative Procedure Act are not controlling. He may not be charged with any omission to comply with the requirements of an act to which his performance is not subject. The claim of invalidity of the finding of dumping predicated upon the provisions of the Administrative Procedure Act is, therefore, untenable.

Is it, as plaintiff alternatively contends, nevertheless invalid for the reason that the Secretary of the Treasury exceeded the authority conferred upon him by the provisions of the Antidumping Act of 1921? It is by now settled law, beyond the realm of further judicial consideration, that where a statute vests within the province of a governmental official the right to perform a given function, at his discretion and upon such inquiry as he deems advisable in the circumstances of the case, the existence and substantiality of the facts to support the exercise of his judgment are outside the scope of judicial review. *United States* v. *George S. Bush & Co.*, 310 U. S. 371. And this principle has been related specifically to the actions of the Secretary of the Treasury, under authority of the Antidumping Act of 1921. *Kleberg & Co. (Inc.)* v. *United States, supra; Chas. D. Cramer et al.* v. *United States*, 44 Treas. Dec. 467, Abstract 46501; *Cline Stewart Co.* v. *United States*, 61 Treas. Dec. 1447, Abstract 18998.

It does not appear that plaintiff is here suggesting a reexamination of this established precept. Rather, it is urged, as stated in plaintiff's reply brief:

* * * We are emphatically not challenging the absence of substantial evidence to support the findings in this case. Instead, we assert that the Secretary's action is "in excess of statutory jurisdiction." And if the issue of jurisdiction turns on whether the actual facts fall within the statutory authority, then this

Court is as free as any Court to inquire, nay it must inquire, into those facts, whether or not they are "confidential."

If the Secretary of the Treasury, in making his finding of dumping, has exceeded his statutory authority or has proceeded upon an improper theory of law, his action is reviewable by the court. *Cardillo* v. *Liberty Mutual Insurance Co.*, 330 U. S. 469; *American Airlines, Inc., et al.* v. *Civil Aeronautics Board*, 178 F. (2d) 903. "An agency may not finally decide the limits of its statutory powers. That is a judicial function." *Social Security Board* v. *Nierotko*, 327 U. S. 358, 369.

Counsel's argument rests on the assumption that the Secretary of the Treasury acted upon an erroneous interpretation of the law, in finding, from the facts elicited, that the American hardboard industry is likely to be injured by reason of the importation of hardboard from Sweden. It proceeds upon the theory that the purpose of Congress in enacting the Antidumping Act of 1921 was to protect American industry against *totally destructive* dumping. Statements of members of the House of Representatives and of the Senate, the report of the Committee on Ways and Means, a statement of a member of the United States Tariff Commission, and the 1956 report of the Secretary of the Treasury on the Antidumping Act [4] are adverted to to spell out the proposition that when Congress employed the words "is being or is likely to be injured, or is prevented from being established," it meant the destruction or threatened destruction of domestic industry by flooding the market with goods at less than foreign cost. This, it asserted, is the legislative standard by which the terms "injury" and "dumping" are to be measured.

By reference to a report of the United States Tariff Commission, dated March 1955, on an investigation of hardboard, conducted pursuant to a resolution by the Committee on Finance of the United States Senate, dated August 9, 1954 (plaintiff's exhibit 1), counsel sought to establish that since, as therein shown, the volume of imports of hardboard from Sweden during the period of the Secretary's investigations did not exceed 2.46 per centum of the apparent consumption of hardboard in the United States, and that the net operating profits of domestic manufacturers were increasing during that period, the existing facts before the Secretary of the Treasury at the time of his injury investigation did not support a finding of industrially destructive dumping or the likelihood thereof.

Without commenting at length, it must be at once observed that the Tariff Commission conducted its investigation subsequent to the time the Secretary of the Treasury was engaged upon his, and for a

---

[4] 61 Cong. Rec. 262, 328, 334, 352, 1021, 1023, 1027, 1103, 1194; H. Rept. No. 1, 67th Cong. 1st Sess. Hon. William S. Culbertson "Commercial Policy in War Time and After."

different purpose. Whether the Secretary of the Treasury considered the same or different facts in exercising his judgment is not a matter into which inquiry may here be made.

Although the record in the instant case is replete with evidence of data submitted to the Secretary in connection with his deliberations, both on behalf of plaintiff and other importers, and on behalf of the domestic industry (defendant's exhibits B1, B15, C1, and C12), there is no showing of how the Secretary interpreted the meaning of the statutory words "is being or is likely to be injured, or is prevented from being established." It is not the province of the court to evaluate the facts or to determine whether they sustain the finding. *United States* v. *George S. Bush & Co., supra.* Neither can any inference be drawn from the Secretary's use of the statutory terminology that he did or did not give to that language the construction for which plaintiff here contends, assuming, without deciding, that such is the proper meaning of the phrase in question.

In this respect, the instant case is distinguishable from *Kleberg & Co. (Inc.)* v. *United States, supra.* There, the court was prompted to examine the theory of law upon which the Secretary proceeded by the fact that he had, by published regulation, defined the meaning of the phrase "fair value." Whether or not the facts fell within that interpretation, or indeed whether the regulation was valid was not at issue. What the court did determine was whether the promulgated construction was within the scope of the authority conferred upon the Secretary by the Antidumping Act.

In the instant case, what the court is asked to decide is whether from facts which may or may not have been before the Secretary in the form here presented, an erroneous principle of law was adopted, without any affirmative showing of what that principle was. This is an entirely different question, which, in the last analysis, depends upon the weight and value of the evidence which the Secretary had before him. It is not the province of the court to substitute its discretion for that of the Secretary of the Treasury or to analyze the facts in the light of ephemeral construction. Had the Secretary determined on the basis alone of the facts shown in the Tariff Commissioner's report that industrially destructive dumping was likely to occur, this court could not consider whether the facts justified that determination. It cannot, therefore, employ those facts to spell out a construction contemplating a less grievous injury.

It must be assumed that the performance of an act by a public official falls within the scope of his delegated authority, unless the contrary is shown. *Martin* v. *Mott,* 12 Wheat. 12. Since the Secretary is the sole judge of the existence of the facts necessary to support

his finding, and his finding has been made in the language of the applicable statute, his act may not be judicially characterized as *ultra vires*.

Based upon the forgoing considerations, the court is of opinion that the claim of invalidity of the finding of dumping issued by the Secretary of the Treasury on August 26, 1954, is without justification. The following findings of fact and conclusions of law are, therefore, made:

Findings of fact:

1. The merchandise involved in this case consists of hardboard exported from Sweden on November 21, 1953, and entered at the port of New York on December 3, 1953, under entry No. 799887 1/2.

2. The appraisement of said merchandise within the provisions of section 402 of the Tariff Act of 1930 is not contested.

3. Pursuant to a finding of dumping of the Acting Secretary of the Treasury, issued on August 26, 1954 (89 Treas. Dec. 197, T. D. 53567), and published in the Federal Register, September 3, 1954 (19 F. R. 5631), and in accordance with the provisions of the Antidumping Act of 1921, the appraiser determined the "foreign market value" and the "purchase price" of the subject merchandise.

4. The appraiser's determinations of said value and price, respectively, are not here challenged.

5. In issuing his finding of dumping the Acting Secretary of the Treasury did not follow the specific procedures prescribed in section 4 of the Administrative Procedure Act of 1946 (5 U. S. C. § 1001 and following).

6. On October 15, 1953, the Acting Commissioner of Customs directed that appraisements be withheld on all unappraised entries of hardboard from Sweden.

7. This importer and others received a notice of such withholding on customs Form No. 6459 as to entries unappraised as of October 15, 1953, and as to succeeding entries; and such withholding continued until the Acting Secretary of the Treasury made and issued his finding of dumping. The Secretary's finding of dumping was made in the language of the Antidumping Act of 1921.

Conclusions of law:

1. The appraisement of the instant merchandise under the provision of section 402 of the Tariff Act of 1930 is affirmed.

2. The Secretary of the Treasury, in the exercise of his functions under the Antidumping Act of 1921, is not subject to the provisions of the Administrative Procedure Act of 1946.

3. The Secretary of the Treasury is the sole judge of the existence of the facts necessary to support his determination of likelihood of injury.

4. This court is without jurisdiction to review, evaluate, or assess the facts upon which the finding of dumping was made.

5. There being no evidence to show in what manner the Acting Secretary of the Treasury construed the language "is being or is likely to be injured, or is prevented from being established," the facts before him may not be weighed for the purpose of determining whether his construction of said language did or did not accord with a suggested congressional interpretation thereof as meaning "the destruction or threatened destruction of domestic industry."

6. The action of the Acting Secretary of the Treasury in issuing the finding or dumping is presumed to be taken within the scope of his delegated authority.

7. There is no proper showing that the Acting Secretary of the Treasury proceeded upon a wrong principle of law in making his finding of dumping.

8. The finding of dumping with respect to hardboard from Sweden is valid.

9. The values returned by the appraiser under said Antidumping Act of 1921, with respect to the merchandise at bar, are proper and are hereby affirmed.

Judgment will be entered accordingly.