THE PEOPLE OF THE STATE OF NEW YORK ex rel. SAMUEL HARDY, Respondent, *v.* FRANCIS VINTON GREENE, as Police Commissioner of the City of New York, Appellant.

*New York police force — the right to retire on a pension after twenty years' service is defeasible by misconduct.*

A member of the police force of the former city of Brooklyn, who, at the time he was transferred to the police force of the city of New York, was entitled, by reason of his having served for more than twenty years, to be retired on half pay, pursuant to subdivision 6 of section 42 of title 11 of the charter of the city of Brooklyn (Laws of 1888, chap. 583), which right was preserved by section 355 of the Greater New York charter (Laws of 1897, chap. 378, as amd. by Laws of 1901, chap. 466), is not entitled to exercise this right while he is under suspension pending the trial of charges of neglect of duty, which, if proved, would justify his dismissal from the force.

The right to retire voluntarily upon half pay, which the member had at the time he was transferred to the New York police force, was not indefeasible, but such right was subject to his continued good behavior.

GOODRICH, P. J., and HOOKER, J., dissented.

APPEAL by the defendant, Francis Vinton Greene, as police commissioner of the city of New York, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 3d day of June, 1903, granting a peremptory writ of mandamus requiring the

defendant to retire the relator from service on the police force and to place him upon the police pension roll.

*James McKeen* [ *Walter S. Brewster* with him on the brief], for the appellant.

*William B. Hurd, Jr.,* for the respondent.

HIRSCHBERG, J.:

On May 11, 1903, the relator, a captain on the police force of the city of New York, applied in writing to the respondent, the police commissioner of said city, to be retired from service and to be placed upon the police pension roll, with an award during life of half-pay, amounting annually to the sum of $1,375. The application was denied by the commissioner for the reason that serious charges of neglect of duty which, if proven, might justify his dismissal from the force, had been duly preferred against the relator on May 6, 1903, and had resulted in his lawful suspension from active service on May 7, 1903, but upon which charges he had not been tried at the time of the application. The order appealed from requires the commissioner to retire the relator in accordance with his application, and can only be supported upon affirmance of the proposition that his right to be retired upon a life pension is so absolute in its nature that it cannot be defeated by his own misconduct.

The assertion of this unusual right is based upon a literal reading of the statutes governing the case without giving due regard to their undoubted intent and beneficial purpose. The relator has been a policeman for thirty-six years in the borough of Brooklyn, and at the time of the consolidation of the constituent municipalities in the formation of Greater New York was entitled to be retired as a police captain in accordance with the terms of subdivision 6 of section 42, title 11, of the Consolidation Act, relating to the city of Brooklyn (Laws of 1888, chap. 583). That subdivision provides that any member of the police force who shall have performed police duty for twenty years or upward "shall, upon his own application in writing, be retired from service and placed upon the police pension roll, and thereupon shall be awarded, granted and paid from said police pension fund by the trustees thereof an annual sum during his lifetime equal to one-half the full pay of a member of said police

force of the rank of the member so retired." By the Greater New York charter (Laws of 1897, chap. 378, as amd. by Laws of 1901, chap. 466) provision is made for the pensioning of members of the consolidated police force by the terms of section 355, and the relator's right to be retired upon a pension because of the length of the service rendered by him before consolidation is expressly preserved by the proviso that "no member of either of the police forces by this act consolidated, having a right to retire upon a pension at the time this act takes effect, shall be deprived of such right by reason of his remaining upon the police force, or of anything in this act contained."

It seems to me that the object of the two statutes which I have quoted is quite apparent, and that it does not include the creation of an indefeasible right to retirement, notwithstanding that the member seeking to be retired has been guilty of gross misconduct in office. The provision in the statute relating to the city of Brooklyn is like all pension provisions designed to encourage long and faithful service by the assurance of ultimate honor and the reward of a life-long competency. While there is no provision in the statute to the effect that the applicant for retirement must be in good standing at the time, it must be assumed from the very nature and purpose of a pension that no successful application could be made by one who was under suspension pending the trial of charges relating to his official conduct. The pension roll is a roll of honor — a reward of merit, not a refuge from disgrace — and it would be an absurd construction of the language creating it to hold that the intention of the Legislature was to give a life annuity to persons who on their merits, as distinguished from mere time of service, might be dismissed from the force for misbehavior. If this view of the statute is correct, it follows that the relator's right to retirement at the time of consolidation was subject to his continued good behavior. This right continued after consolidation, for the provision of the greater charter hereinbefore quoted is manifestly intended to give to the relator the benefit of his long service in the city of Brooklyn, and not to require him to serve anew the prescribed period in the greater city. Be that as it may, however, it cannot be said that the relator is deprived of any right by reason of his remaining upon the police force after consolidation, or by reason of anything contained in the Greater New York

charter (*supra*). He is deprived of the right to retire because he has been suspended from the force until the charges pending against him have been tried, and should he be unfortunately convicted and dismissed as a punishment, his right to retirement would be lost by his own delinquencies, and not in a legal sense by reason of his continuance in service. His suspension was authorized by section 292 of the greater charter (*supra*), and such suspension naturally and necessarily carried with it for the time being suspension from the enjoyment of the privileges as well as from the performance of the duties incident to the position.

The general provisions of the greater city charter relating to the police force indicate a design to form a homogeneous police system which should preserve to those who have served outside of the territory of the former city of New York such rights as are essential to the claims of justice without sacrificing the elements of unity and equality. If an intention existed to confer upon a favored class the special privilege claimed by the relator, it should have been manifested by explicit expression. It should not be construed into the law, for its effect would be not only to work injustice upon the other members of the force, but to greatly impair the efficiency of the department as a whole ; for nothing can be imagined more likely to discourage ambition, to destroy discipline or to stifle stimulus, than the creation of a privileged class among the police who should be possessed by law of the absolute right to avoid the consequences of violation of duty by the mere voluntary adoption of an honorary retirement enriched by the enjoyment of a life annuity.

The order should be reversed and the proceedings dismissed.

BARTLETT and JENKS, JJ., concurred ; HOOKER, J., read for affirmance, with whom GOODRICH, P. J., concurred.

HOOKER, J. (dissenting):

In this appeal we are called upon to give construction to parts of two statutes. The charter of the city of Brooklyn (Laws of 1888, chap. 583, tit. 11, § 42, subd. 6, re-enacting Laws of 1877, chap. 438, § 5, as amd. by Laws of 1886, chap. 632), treating of the granting of pensions to members of the police force of that city, provides as follows : " Any such member of the police force or attache of said police department who has or shall have performed police

duty for a period of twenty years or upwards, shall upon his own application in writing be retired from service and placed upon the police pension roll, and thereupon shall be awarded, granted and paid from said police pension fund by the trustees thereof an annual sum during his life-time equal to one-half the full pay of a member of said police force of the rank of the member so retired." The question of law raised as to this subdivision is whether a police officer after a service of twenty years is entitled absolutely to be retired from service and placed upon the police pension fund roll even though there are charges pending against him, preferred after the expiration of the twenty-year period and prior to his application in writing for his discharge. We think that this right is indefeasible. The language of the statute is plain and unequivocal; the words employed are in common use and are to be taken in their plain and ordinary signification. It has been said that "the words of a statute, if of common use, are to be taken in their natural, plain, obvious and ordinary signification." (1 Kent's Com. [14th ed.] § 462.) This language is approved by Judge GRAY, speaking for the Court of Appeals, in *People ex rel. Bockes* v. *Wemple* (115 N. Y. 302, 307) and he adds : " It is only where the literal acceptation of the words used will work a mischief, or some absurd result, or where some obscurity in the sense compels it, that we need resort to extrinsic aids of interpretation. The intent of the Legislature is to be sought, primarily, in the words used, and, if they are free from ambiguity, there is no occasion to search elsewhere for their meaning. As it was said in *McCluskey* v. *Cromwell* (11 N. Y. 593), ' It is not allowable to interpret what has no need of interpretation ; and when the words have a precise and definite meaning to go elsewhere in search of conjecture, in order to restrict or extend the meaning. The natural and obvious meaning should be taken without resorting to subtle and forced construction.' "

The meaning of the words "shall upon his own application in writing be retired," if construed according to this rule, can carry no other import than that if the police officer has served twenty years, and if while still a member of the force he makes his own application in writing for retirement and a place on the police pension roll, his right to such retirement and place cannot be denied.

This must be held to be the evident intention of the Legislature, for, had such intention been otherwise, it is only fair to assume that proper words descriptive of such different intention would have been used. A different intent is shown in other parts of section 42 of title 11 of the enactment of 1888, for it is provided by subdivision 7 that in every case mentioned in subdivisions 3, 4 and 5 of the section the commissioner of police and excise shall determine the circumstances and in his discretion *may* order the retirement and the payment of the pension. And again in subdivision 8 the commissioner of police and excise is empowered in his discretion to order any pension or any part thereof to cease, except as to members of the force who have retired after twenty years' service, and nothing contained in the section is to render the granting or payment of such pensions obligatory upon the commissioner, or chargeable as a matter of right upon the pension fund, except as provided in subdivision 6, treating of those who have served twenty years. Thus it would seem that the whole scheme of section 42 of title 11 of the Brooklyn charter was to render the granting of pensions discretionary with the commissioner except in the case of those to be granted under subdivision 6.

The language of similar enactments in the Consolidation Act in force prior to the year 1888 may throw some light upon this question. By section 307 of chapter 410 of the Laws of 1882 (Consol. Act) relating to the former city of New York, it was provided that any member of the police force who had performed duty for a period of twenty years and upwards might, in the discretion of the board of police, by a resolution unanimously adopted by a full board, be retired from service and receive a place upon the pension roll. By chapter 364 of the Laws of 1885 this section was amended so as to provide that any member of the police force who has performed duty therein for a period of twenty years or upwards, upon his own application in writing shall "by resolution adopted by a majority vote of the full board" be dismissed and placed upon the pension roll. These different expressions of language had been used by the Legislature shortly before the passage of the act of 1888, and had it intended to make a provision as to the then city of Brooklyn, similar in these respects to those provisions which were then existing in the former city of New York, it is fair to assume that they would have

used the same or similar language. This is especially true since the case of *People ex rel. Tuck* v. *French* (108 N. Y. 105), decided in January, 1888, held under the act of 1885, applicable to the city of New York, that the mere filing of an application by a member of the police force, after a service of twenty years, does not dissolve his connection with the force, and that he remains subject to its authority until the application has been granted by a majority of the board fixing the pension to be awarded. The charter of the city of Brooklyn was the last chapter of the one hundred and eleventh session of the Legislature and did not receive the approval of the Governor until June 9, 1888; the Legislature had abundant opportunity of being advised of the construction placed upon its former enactments; that it intended a contrary rule for the city of Brooklyn is, we think, thoroughly evidenced by the plain and unequivocal language differing materially from that it had employed in relation to the neighboring city.

The *Tuck* case, and that of *People ex rel. Brady* v. *Martin* (145 N. Y. 253), in construing the act of 1885, held that the discretion is vested in the police board to be exercised upon the application of an officer for dismissal and a place on the pension roll. If the words "shall by resolution adopted by a majority vote of the full board be relieved," etc., call upon the board for the exercise of judicial duty, the mere words "shall upon his own application in writing be retired," etc., cannot, we think, be held to confer more than ministerial duty upon the commissioner.

Prior to the taking effect of the Greater New York charter (Laws of 1897, chap. 378) this relator had served continuously upwards of twenty years as a member of the police force in the city of Brooklyn, and was taken over into the police force of the greater municipality; on the 7th day of May, 1903, charges were preferred against him, and before the trial of the charges he made his own application in writing, on the eleventh of that month, to be dismissed from the police force and placed upon the police pension roll.

Section 355 of the charter, as amended in 1901 (chap. 466) provides partly as follows: "Provided, however, that no member of either of the police forces by this act consolidated, having a right to retire upon a pension at the time this act takes effect, shall be deprived of

such right by reason of his remaining upon the police force, or of anything in this act contained."

The second question we are required to pass upon is the construction to be given these words from that section, "having a right to retire upon a pension at the time this act takes effect." The appellant contends that this saving clause in the section affected only those members of the police force who, having served twenty years, had, prior to the taking effect of the Greater New York charter, made their applications in writing for dismissal and places on the pension roll. If that construction is correct, then this relator, not having made his application before the act took effect, is to be granted his pension only according to the provisions of the first sentences of section 355 (*supra*), which as far as this relator is concerned provide that "any member of the police force who has, or shall have performed duty on any such force aforesaid, for a period of twenty-five years, * * * being of the age of fifty-five years, * * * upon his own application in writing, *provided there are no charges against him pending*, must be relieved and dismissed from said force and service by the department and placed on the roll of the police pension fund," etc.

The construction, however, for which the appellant contends is, we think, forced in the extreme. At the expiration of his twenty years' service as a member of the police force of the city of Brooklyn this relator had "a right to retire upon a pension;" that right was ripe the moment the twenty years expired, and was no less a right the day after the expiration of that period than upon the day it was complete; if the right continued intact and unimpaired for one day it existed for a year, and until this relator made application on the 11th of May, 1903.

The language of section 355 (*supra*) is that "no member * * * having a right to retire upon a pension at the time this act takes effect, shall be *deprived of such right by reason of his remaining upon the police force*," which implies that the right to retire upon a pension shall exist without impairment during the relator's continuance upon the force.

The relator has shown himself to be within the exception of section 355 of the Greater New York charter as amended in 1901, and, therefore, within the provisions of the act of 1888, and as we

hold that under the provisions of that enactment the duties of the commissioner were simply ministerial, and that there vested in the relator an absolute right to dismissal and a place upon the pension roll upon his making proper application in writing, the order of the Special Term must be affirmed, with costs.

GOODRICH, P. J., concurred.

Order granting peremptory writ of mandamus reversed, with ten dollars costs and disbursements, and proceeding dismissed, with costs.