### No. 35,312

U. S. GRANT, *Appellant*, v. THE CITY OF TOPEKA, JOHN F. SCOTT, Mayor, and THE CITY COMMISSION OF THE CITY OF TOPEKA, JOHN F. SCOTT, Mayor, and WILLIAM CAWKER, EARL CHANDLER, TOM STEELE and WILLIAM CUNNINGHAM as the Board of Trustees of the Topeka Firemen's Pension Fund, *Appellees*.

(121 P. 2d 224)

Opinion filed January 24, 1942.

*Frank E. Miller,* of Topeka, for the appellant.

*Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey, Robert E. Russell* and *Philip E. Buzick,* all of Topeka, for the appellees.

The opinion of the court was delivered by

Dawson, C. J.: This is an appeal from a judgment denying plaintiff's application for a writ of mandamus to compel the defendants to grant him a pension as a retired member of the Topeka fire department in conformity with the statute, G. S. 1939 Supp. 13-748, 13-752.

The statute provides for the creation of firemen's pension fund in all cities having a population of more than 60,000 and less than 90,000, and Topeka falls in that category. Any member of such city's fire department who has attained the age of fifty years and has served for twenty years in its fire department may retire voluntarily and shall be entitled to claim and receive a pension of $75 per month.

In his amended petition for a writ of mandamus, petitioner alleged that he was fifty-seven years old, that he began his employment as a fireman in Topeka in 1912 and that he had served in that capacity continuously for twenty-six years, and that—

"On or about the 14th day of August, 1938, while said plaintiff was actively employed as a fireman on the force of the Topeka fire department of the city of Topeka, Shawnee county, Kansas, said plaintiff tendered his resignation to said William Cawker, fire chief of the city of Topeka, Shawnee county, Kansas."

Plaintiff's application for the writ further alleged—

"That thereafter, on the 31st day of October, 1938, said plaintiff notified and informed William Cawker, fire chief of the city of Topeka, Shawnee county, Kansas, that he desired to be placed upon the pension list and to voluntarily retire from active service as a fireman on the Topeka fire department and that said William Cawker refused to recognize said application as made by the plaintiff on the 31st day of October, 1938.

. . . . . . . . . . . . . . . . .

"Plaintiff further alleges that since the 31st day of October, 1938, at the time when said plaintiff made application to William Cawker, fire chief of the city of Topeka, Shawnee county, Kansas, he has not returned to work and that he has voluntarily retired from active duty as a member of the Topeka fire department of the city of Topeka."

Petitioner alleged that at various times thereafter, both orally and in writing, he applied to the defendants for a pension as authorized by the statute, pertinent city ordinances and the bylaws and rules

of the Topeka fire department; but that such application was repeatedly ignored and eventually denied arbitrarily and capriciously.

The answer and return to the alternative writ contained a general denial and certain specific denials, and alleged that defendant was discharged from his job as a fireman because of habitual drunkenness during the time he was in the performance of his duties as a fireman for the city of Topeka.

Petitioner filed a reply to this answer and return denying generally and specifically the matters alleged therein.

The cause was tried by the court. The bylaws and city ordinances governing the firemen's pension fund and the Firemen's Relief Association of Topeka were offered in evidence, likewise the rules and regulations of the fire department. In the latter it is provided that the chief of the department is held responsible for the discipline, good order and proper conduct of the entire fire department, and he is given power "to suspend or dismiss any employee of the fire department for . . . intoxication, neglect of duty, violation of the rules . . . or other good and sufficient cause." (Rule III, sec. 1.) Similar powers are vested in assistant chiefs, captains and lieutenants of the fire companies for the proper discharge of their respective duties, subject to the supervisory authority of the chief. (Rule III, secs. 2, 4.) By a general rule it is provided:

"Any member who, while on duty, or while in uniform, or when about any of the premises of the department, becomes intoxicated, . . . or reports for duty while intoxicated, shall be discharged from the department."

While petitioner adduced some evidence tending to show that on the occasion of the termination of his services as a member of the Topeka fire department he was sick and not intoxicated, his principal reliance to support his right to a pension was based on an incident which occurred between himself and the chief of the fire department some months previously. It appears that on that earlier occasion, about August 11, 1937, petitioner had reported for duty in an intoxicated condition. A lieutenant of the fire department testified: "I was Grant's superior officer. . . . I think he had been intoxicated a dozen times over a period of twenty-four years." The fire chief testified that he had investigated reports of Grant's occasional lapses from sobriety, and had a conversation with him:

"Mr. Grant told me that he had come on duty at least two times in an intoxicated condition, to such an extent that he was unable to perform his duties. Upon Mr. Grant's admission that he had been drunk and unfit for duty on

various occasions, I gave him the same chance that I give every man in the fire station, who makes a practice of the use of liquor. I asked him to sign a pledge to abstain from the future use of liquor, while a member of the Topeka fire department. I told him that was his last chance. If he violated that pledge, he would be discharged. . . .

"My purpose in having him sign the pledge was to try to straighten him out and make a man of him. It was not intended to give him an opportunity to resign before he was discharged."

Grant signed a form of pledge which had been used in the fire department for years. It read:

"*Mr. William J. Cawker, Chief of Fire Department, Topeka, Kan.:*

"DEAR SIR—I hereby pledge myself to abstain from the use of any intoxicants at any time while I am an employee of the Topeka fire department.

"Should I violate this pledge I will immediately tender my resignation to the chief of the department.           Sincerely,           (s) U. S. GRANT.
Witness:   (s) CAPT. WASHINGTON.
Dated Aug. 11, 1937."

The evidence for defendants was that Grant reported for duty on October 30, 1938, in an intoxicated condition. The assistant fire chief testified:

"He [Grant] told me he had drank two bottles of beer. In my judgment he was not fit to perform his duties, and I told him to go home and report to the chief in the morning. That is as far as my authority goes. I could suspend, but that was all. . . ."

The following day, October 31, 1938, the fire chief investigated the matter. He testified:

"Mr. Grant came to the headquarters fire station and I met him in the hallway. He told me the assistant chief had suspended him the night before and told him to report to me. I thereupon told him that his services with the department were over. . . . although I did not use the word 'discharged.' Mr. Grant never made any request to resign."

The trial court made certain findings of fact, all favorable to defendants. Some of these read:

"v

"That sometime in August of 1937, U. S. Grant was charged with having reported for duty in an intoxicated condition, and Chief Cawker, chief of the fire department, made an investigation, and upon Grant's admission that he had taken some drinks on duty one day, and other evidence, determined these charges were true.

"VI

"Thereafter, on August 11, 1937, U. S. Grant filed a pledge, pledging himself to abstain from the use of intoxicants and agreeing to 'immediately tender my resignation to the chief of the department' if he violated the pledge.

"VII

"That on October 30, 1938, U. S. Grant reported for duty at Fire Station No. 3 in an intoxicated condition. Wm. Hatcher, the captain in charge of that station, called Assistant Chief Chandler to Station No. 3 to examine Grant's condition. That Chandler, after examining Grant, suspended him and sent him home because Grant was so intoxicated he was not able to perform his duty. That Chandler instructed Grant to report to Chief Cawker the following morning, October 31, 1938.

"VIII

"That in pursuance of Assistant Chief Chandler's instructions, Grant reported to Chief Cawker on the morning of October 31, 1938. That at that time Chief Cawker discharged him from the service.

"IX

"That Grant did not at any time offer or tender his resignation, either before or after the morning of October 31, 1938, up to and including the date of the trial of this action.

"X

"That at the time Grant made application for his pension, he was not a member of the Topeka fire department and had not been a member of said department since October 31, 1938.

. . . . . . . . . . . . . . . .

"XV

"That there was no arbitrary or capricious action on the part of the board of trustees of the firemen's pension fund in rejecting Grant's application for a pension, which application was dated April 27, 1939."

Judgment was entered accordingly and petitioner appeals, contending that his retirement on October 31, 1938, was voluntary. But the evidence to which the trial court gave credence was to the contrary, which forecloses that issue.

It is strongly urged, however, that the incident of August 11, 1937, which included the pledge to abstain from intoxicants which Chief Cawker then exacted from appellant was in effect a binding agreement between him and his superior officer. We must hold otherwise, in view of the testimony of the fire chief and the trial court's finding in accordance therewith. But above and beyond the evidence, there is an insurmountable legal proposition which quite demolishes appellant's theory of a binding agreement. Neither the statute, the city ordinances, nor the bylaws conferred power upon the fire chief to make an agreement that appellant could resign and receive a pension if he breached his pledge to abstain from the use of intoxicants. The legal consequence attached to appellant's delinquency was to be discharged, and the duty to discharge him under such circumstances

was one the fire chief could not avoid. This. court holds that no right to a pension was conferred on appellant by the pledge of sobriety he gave on August 11, 1937, nor by his breach of it on October 30, 1938.

Some minor matters urged in the briefs have been carefully considered, but they do not warrant discussion.

The judgment is affirmed.