Emile J. DAIGLE, Plaintiff

v.

Robert E. McLAUGHLIN et al.,
Defendants.

Civ. A. No. 188–61.

United States District Court
District of Columbia.

April 26, 1961.

Zona Mae Fairbanks, Washington, D. C., for plaintiff.

Michael Cramer, Asst. Corp. Counsel, Chester H. Gray, Corp. Counsel, and John A. Earnest, Assistant Corp. Counsel, Washington, D. C., for defendants.

1. Spencer v. Bullock, 1954, 94 U.S.App. D.C. 388, 216 F.2d 54.

2. §§ 4–521 to 4–538, D.C.Code (Supp. VIII 1960). These sections, which are the 1957 revision and re-enactment of the Act, are applicable in this case because they, rather than the prior version, were in effect on the day plaintiff applied for retirement.

YOUNGDAHL, District Judge.

Cross-motions for summary judgment and defendants' alternative motion to dismiss the complaint raise a single issue left open in a recent opinion of the Court of Appeals [1]: Whether the District of Columbia Policemen and Firemen's Retirement and Disability Act [2] gives to a fireman otherwise eligible, the absolute right to elect retirement while his status is that of a "suspended" (but not discharged) employee.

The undisputed material facts are these: Since October 1, 1956, § 4–528(1) of the latest revision of the Retirement and Disability Act has provided that:

"Any member who attains the age of fifty years and completes twenty years of police or fire service may, after giving at least sixty days' written advance notice to his department head stating his intention to retire and stating the date on which he will retire, voluntarily retire from the service and shall be entitled to an annuity * * *."

Plaintiff Daigle was born July 10, 1902, and became a member of the Fire Department on September 28, 1928. From the latter date, he served continuously and actively with the department, rising to the rank of captain, until he was suspended on April 20, 1956. The previous day, April 19, 1956, he had been arrested and charged with embezzlement. Almost a year later, on March 22, 1957, and following his conviction on this embezzlement charge, Daigle was given a three-year suspended sentence. His suspended status with the Fire Department having continued unchanged after his trial and conviction, Daigle, on January 10, 1958, wrote to his department head and informed him that he was electing to retire from the department in accordance with the above-quoted Act provision. The department, however, took no action

on this information in particular, nor on Daigle's status with the department in general, until March 31, 1959, when a trial board met to consider his case, deciding the following day to recommend his dismissal from the service. This decision was affirmed by the Commissioners on June 12, 1959, and they ordered Daigle's dismissal—effective June 25, 1959. Following an unsuccessful court attempt to secure reinstatement in the service, Daigle, at the beginning of this year, commenced the present action—seeking (a) declaration that the Act mandated the Commissioners to accept his retirement announcement and (b) injunction to them to pay him the benefits provided for in the Act.

In 1954, the Court of Appeals, in Spencer v. Bullock, supra, note 1, held that a policeman covered by the almost identical pre-1956 version of the statute here at issue [3], who applied for retirement on February 11, 1952, was suspended on May 23, 1952 for conduct inconsistent with his responsibilities, and was dismissed from the department on September 14, 1953, was entitled to an injunction to the Commissioners to accept his retirement application. The Court ruled that under the Act as it then was written, once a man proved that he was of requisite age, that he had served with his department for the required period, and that he was still a "member" of the department, there was no discretion in the Commissioners to refuse his application for retirement;

> "[t]o say that a policeman may at his election be retired is not to say that after he has made his election the Commissioners may, at their election, refuse to retire him." 94 U.S.App.D.C. at pages 389–390, 216 F.2d at page 55.

There being no contention in this case that the Commissioners have any greater discretion to refuse the application of one who is a "suspended member" of the Fire Department than of one who is an "active member," the only issue here to be decided is whether one in suspended status with the Fire Department is still a "member" of the department within the meaning of the Act, so that his retirement is "from the service" as the Act requires [4].

It is undisputed that for many other purposes one in suspended status is still a "member" of the Fire Department— that he must, for example, return to active status or special duty if so ordered; inform the department of a change of address; and secure its permission to leave the confines of the District. It is also undisputed that "suspended" status includes men who have committed a wide range of infractions of departmental rules—as minor as reporting late for work. Finally, it is not disputed that dismissal from the service is not an automatic consequence of suspension. For these reasons alone, the Court would rule that one in suspended status was still a member of the department for purposes of the Retirement Act.

But more important for the Court in thus construing the statute is the absence of any indication that in passing it and establishing eligibility for pensions, Congress meant to distinguish between those who elect to retire before being suspended and later dismissed, as did the plaintiff Bullock, and those whose suspension (but not dismissal) precedes such election.

Nor, in the light of the Bullock case, can the Court accept the contention of the Commissioners' counsel that Congress meant to make the District of Columbia pension roll a "roll of honor." Rather, as the Court of Appeals indicated in Bullock, the pension system is instituted as a means of attracting qualified men to

---

3.  § 4–508, D.C.Code (1951 ed.)

4.  Section 4–524(2), claimed by defendants to govern this situation, is inapplicable. That section provides for *refunds* of Retirement Act contributions to members of the fire and police departments "separated from [said] department, *except for retirement"; to utilize it to decide the question here, which is whether a fireman shall be permitted to retire, would assume the question.

the police and fire services, a goal which would be impaired if "the Commissioners may always deny a man a pension if they conclude he is unworthy of one." 94 U.S.App.D.C. at page 390, 216 F.2d at page 56 [5].

Especially is the Court reluctant to take the essentially legislative step of interpreting "member" as "member of a roll of honor" when it is only four years since Congress extensively revised this statute, a revision which occurred, it will be noted, after the Bullock decision. Congress and the District Commissioners knew that the exact question here at issue was left open in Bullock; they also should have recognized that to decide it

against an applicant would be contrary to the spirit of that decision. It would have been an easy matter for Congress to have said: no pensions for those dismissed for misconduct from these public agencies.

Thus, in the face of Court of Appeals' precedent and Congressional silence, this Court declines to engage in a doubtful exercise in statutory construction to reorient this pension system into an ancillary disciplinary vehicle from a device for attracting men to the police and fire departments by assuring them security in old age.

Order granting plaintiff's motion and denying defendants' motion is filed herewith.

[5]. For further background on this statute, see the Court of Appeals' decision in Bullock, supra, and that of the District Court in the same case, D.C.D.C.1953, 112 F.Supp. 147. This construction of our District of Columbia Retirement Act renders inapplicable the "roll of honor" cases cited by the Commissioners, e. g. People ex rel. Hardy v. Greene, 1903, 87 App.Div. 589, 84 N.Y.S. 673.