BALTIMORE COUNTY BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM, ᴇᴛ ᴀʟ. *v.* COMES

[No. 391, September Term, 1966.]

*Decided June 13, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*Lee Stuart Thomson, Assistant County Solicitor,* with whom was *R. Bruce Alderman, County Solicitor,* on the brief, for appellants.

*Douglas N. Sharretts* for appellee.

HORNEY, J., delivered the majority opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 191, *infra.*

The question presented by this appeal is whether an employee of Baltimore County against whom charges for dismissal were pending was entitled to retire and receive the pension for which he could qualify by reason of age and length of service.

The General Assembly of Maryland, by Chapter 500 of the Laws of 1943, authorized the county commissioners to establish and maintain a general system of pensions and retirements for the benefit of its employees. Accordingly, an ordinance providing a general system was adopted as of January 1, 1945.[1] Prior thereto the commissioners had been authorized by the legislature to retire and pension members of the fire[2] and police[3] departments.

James M. Comes, a road superintendent, was continuously employed by the county from January 1, 1918 until November 2, 1965, and, upon adoption of the general system, was awarded a certificate of his services prior to January 1, 1945. A series of indictments, returned on August 29, 1962, charging the employee with the acceptance of bribes, was dismissed by the trial

---

1. See County Code (1958), Title 41, § 41-1 through § 41-58, and the amendments thereto, as to general employees.

2. As to firemen, see Chapter 163 of the Laws of 1920, as reenacted and amended from time to time, now codified as Title 21, § 21-12.

3. As to policemen, see Chapter 164 of the Laws of 1920, as amended from time to time, now codified as Title 21, § 21-17.

court on the ground that the indictee had not willingly testified before the grand jury that indicted him and this Court affirmed the orders of dismissal in *State v. Comes,* 237 Md. 271, 206 A. 2d 124 (1965). In the interim, the employee filed an application on June 9, 1964 with the Board of Trustees of the Employees' Retirement System for retirement and a pension under the provisions of Title 41 (Pensions and Retirement) to begin as of July 1, 1964. Thereafter, on March 2, 1965, the employee was served with charges for his dismissal pursuant to Title 22 (Personnel Act). No action was taken on the application for retirement, and, at its meeting on March 18, 1965, the board of trustees postponed action thereon pending the outcome of the charges for dismissal. However, before the charges could be heard by the county administrative officer, the employee filed a petition on April 6, 1965 for a writ of mandamus and, in the alternative, for a declaratory judgment. Following a hearing on the petition for the writ, the lower court (Menchine, J.) ordered that the disciplinary action against the employee be dismissed, that the board of trustees retire the employee forthwith and that the board pay the employee such retirement benefits as he was entitled to receive under the general system.

The county retirement system is composed of three units. That for firemen, codified as § 21-12 under Title 21 (1965 Supp.), provides retirement for permanent members of the fire bureau who "perform faithful service for the bureau for a period of not less than twenty years." Similarly, that for policemen, codified as § 21-17, provides retirement for permanent members of the police bureau who have "become permanently disabled while in the active performance of duty or [have] performed faithful service in the department for a period of not less than twenty years." And as to service retirement benefits generally it is stated, in § 41-13 of Title 41 (1965 Supp.), that the "normal service retirement age shall be the age of sixty" and that a member "may retire before attaining the normal service retirement age provided he has completed thirty or more years of creditable service." The term "creditable service" is defined in § 41-1 as "prior service plus membership service, for which credit is allowable." There is, however, no specific

reference in Title 41 with regard to the faithful or honorable performance of the duties which ordinarily are expected of all employees.

Judge Menchine, relying on *Daigle v. McLaughlin*, 193 F. Supp. 902 (D. C. 1961)[4] and *Spencer v. Bullock*, 216 F. 2d 54 (D. C. Cir. 1954),[5] as authority for the proposition that it is for the legislature, not the judiciary, to decide whether retirement benefits should be restricted to those rendering "honorable" service, declared that the employee was entitled as a matter of law to the retirement benefits for which he had applied. While we agree that it is the function of the county council, not the court, to enact and amend the laws governing the payment of benefits to such employees as have been credited with the number of years of service that makes them eligible for retirement, we think the lower court not only misinterpreted the effect of the earlier legislation (concerning the payment of pensions to firemen and policemen) on the later enactment (concerning the payment of pensions to employees generally), but did not heed the generally accepted rule to the effect that the right of a municipal employee to a pension, irrespective of age and length of service, is subject to the implied condition of employment that his duties will be faithfully performed. Aside from this, it is difficult for us to believe that the county commissioners or county council ever intended to create an inconsistent condition whereunder firemen and policemen would be required to perform the duties expected of them faithfully as a prerequisite to receiving retirement benefits whereas other county employees, regardless of their conduct, behavior and trustworthiness, would be permitted to receive retirement benefits whenever by reason of age or length of service they became entitled thereto.

---

4. In Daigle v. McLaughlin, the holding was to the effect that Congress instead of making the pension roll a "roll of honor" enacted the pension system as a means of attracting qualified men to the police and fire services.

5. In Spencer v. Bullock, the holding was to the effect that since the applicant for a pension was qualified as to age and length of service and the statute imposed no other qualifications, he could not be deprived of a pension by the making of charges on which he was dismissed after he had elected to retire.

In considering the county pension laws as a whole, we think it is clear that all employees, besides having completed the services for which credit was allowable, must also have complied with the obligation to perform them faithfully in order to qualify as a recipient of retirement benefits. Our interpretation of the meaning and effect of the statutes is based on the fact that the county has three separate pension systems; the fact that the affairs of the three units are administered as one system by a single board of trustees designated as the "Employees' Retirement System"; the fact that there is nothing to indicate that the county commissioners, in adopting a general pension system for employees other than firemen and policemen, intended to exonerate the other employees from the behavioral standards that the members of the two other systems were expected to observe; the fact that there is no indication that the council, in embodying the term "creditable service" in the first paragraph of § 41-13, intended that its inclusion therein necessarily precluded the imposition of a faithful service requirement; and the fact that there is nothing to indicate that the county council, in so amending § 41-3 (by adding subsection d) as to *permit* presently employed firemen and policemen and to *require* future firemen and policemen to become members of the general retirement system, intended to create a condition whereunder it could be construed that some firemen and policemen were, and other firemen and policemen were not, subject to the additional requirement as to the faithful performance of their duties. And the cases in this and other states support the interpretation.

Except for the two cases—*Daigle v. McLaughlin* and *Spencer v. Bullock,* both *supra*—relied on by the lower court and the case of *State ex rel. Kirby v. Board of Fire Commissioners of Hartford,* 29 A. 2d 452 (Conn. 1942)[6] which besides being in the minority, are distinguishable on the facts, we have found no cases that, one way or another, do not require the faithful and honorable performance of duties in addition to the length of service and age requirements.

---

6. All of these cases, unlike the instant case, concerned single (not a series of) statutes, in which only age and length of service were required; but the decision in the Kirby case seems to have been based on the deletion by the legislature of a former "meritorious" service requirement.

The cases in this state, though not directly in point, recognize the principle that employees who are dismissed or discharged for criminal activities or malfeasance are not entitled to a pension. In *Bucher v. Ober,* 204 Md. 568, 105 A. 2d 480 (1954), it was held that the concealment by a police officer of his criminal actions until after his retirement did not preclude the reopening of the retirement proceedings and the revocation of his retirement and pension. In *Kone v. Baltimore County,* 231 Md. 466, 190 A. 2d 800 (1963), it was held that the dismissal of a police officer for not having met the test of faithful service and the consequent denial of a pension was neither arbitrary nor unreasonable. Other cases, which, by analogy, are to the same effect in that they hold that an agent or employee who willfully breaches a duty owed by him to his employer forfeits his right to a bonus or other unaccrued compensation include *Adams Express Co. v. Trego,* 35 Md. 47 (1872) ; *Schneider v. Hagerstown Brewing Co.,* 136 Md. 151, 110 Atl. 218 (1920) ; *Johnson & Higgins v. Simpson,* 163 Md. 574, 163 Atl. 832 (1933) and *Maryland Credit Finance Corp. v. Hagerty,* 216 Md. 83, 139 A. 2d 230 (1958).

The vast majority of cases in other states, both as to the *sui generis* character of civil pensions and as to the implication that civil services are to be faithfully performed, are directly in point. In *Ballurio v. Castellini,* 102 A. 2d 662 (N. J. Super. 1954), where the words "served honorably" did not appear in the pension statute with which the court was immediately concerned, the court, after considering the fact that of the sixty pension acts which made up Title 43 of the Revised Statutes only nine spoke of "honorable service" or used equivalent words while fifty-one contained no such reference, stated that one class could not be distinguished from another on any rational basis and that it found no pattern from which a deduction might be made that the legislature had deliberately manifested its intention to require honorable service in some employments and not in others, went on to say (at p. 666)—

"Consideration of all these acts in the light of the *sui generis* character of a public pension inevitably leads to the conviction that 'honorable' service is implicit in every such enactment. A pension is a bounty

> springing from the appreciation and graciousness of the sovereign; it is an inducement to conscientious, efficient and honorable service. And its utility would be destroyed if a person who is properly subject to discharge because of guilt of a crime involving moral turpitude can be said to have an indefeasible claim to a pension simply because he has served the required length of time and reached the necessary age and happens to win a headlong race to file his application for retirement before the public authorities can try him on the charges pending against him arising from such crime."

and then concluded that a ruling on whether the employee was entitled to a pension should be deferred until the pending criminal charges against him had been disposed of. The same court, in *Fromm v. Board of Directors of Police and Firemen's Retirement System,* 195 A. 2d 33 (N. J. Super. 1963), after observing that the failure of a statute to make honorable service a condition precedent to the grant of a pension did not eliminate the honorable service requirement, said (at p. 34) that "one of the fundamental purposes of the pensioning of civil servants is to secure good behavior and the maintenance of reasonable standards of discipline during service."

In *MacIntyre v. Retirement Board of San Francisco,* 109 P. 2d 962 (Cal. App. 1941), where several policemen brought suit to secure pension benefits under a statute that did not specifically require "honorable" service after they had been charged (either before or after retirement) with conduct unbecoming an officer and found guilty, the court, in denying pension rights, said (at pp. 963 and 964) :

> "It is assumed that upon acceptance of a position as officer or employee of a government agency, an appointee will perform his duties conscientiously and faithfully. In some instances an oath is required. When it is not required, efficiency and fidelity in the performance of duty are nevertheless paramount considerations. It is never contemplated that an officer or employee guilty of conduct warranting dismissal should

continue in office or be permitted to receive other emoluments offered as an inducement to honesty and efficiency. The right to a pension is not indefeasible, and an employee, though otherwise entitled thereto, may not be guilty of misconduct in his position and maintain his rights notwithstanding such dereliction of duty."

\* \* \*

"Without regard to the time of the vesting of pension rights, it is an implied condition of employment, and hence a condition of such vesting that the duties of the employee shall have been faithfully performed; it is immaterial whether the proper authorities discover the misconduct and file charges before or after the application for a pension so long as the charges are filed before an order is made by the retirement board."

In *People ex rel Hardy v. Greene,* 84 N. Y. S. 673 (App. Div. 1903), where a policeman had been suspended on charges of misconduct several days before applying for retirement and the statute was silent as to continuous good behavior, it was said (at p. 674) :

"The provision in the statute \* \* \* is, like all pension provisions, designed to encourage long and faithful service \* \* \*. While there is no provision in the statute to the effect that the applicant for retirement must be in good standing at the time, it must be assumed, from the very nature and purpose of a pension, that no successful application could be made by one who was under suspension pending the trial of charges relating to his official conduct. The pension roll is a roll of honor—a reward of merit, not a refuge from disgrace; and it would be an absurd construction of the language creating it to hold that the intention of the Legislature was to give a life annuity to persons who, on their merits, as distinguished from mere time of service, might be dismissed from the force for behavior."

To the same effect see *Van Coppenolle v. City of Detroit,* 21 N. W. 2d 903 (Mich. 1946), where it was held that it is an implied condition of employment, and hence a condition of the vesting of pension rights, that the duties of a municipal employee shall have been faithfully performed. Also see 3 Antieu, *Municipal Corporation Law,* § 22.15.

Although not directly in point, there is another line of cases, which, while recognizing the implied requirement of faithful service, have held that employees were not entitled to a pension because, having been found guilty of malfeasance or improper conduct and suspended, they had, because they were no longer employees, no standing to seek retirement and a pension. See, for example, *Ewing v. Dupee,* 104 So. 2d 672 (Fla.App. 1958) ; *Skaggs v. City of Los Angeles,* 268 P. 2d 1086 (Cal.App. 1954) ; *Grant v. City of Topeka,* 121 P. 2d 224 (Kan. 1942) ; *Kennedy v. City of Holyoke,* 44 N.E.2d 786 (Mass. 1942) ; *State ex rel. Weber v. Board of Trustees of Policemen's Pension Fund,* 101 N. W. 373 (Wis. 1904).

We hold that the right to a pension under Title 41 of the County Code is subject to an implied condition that the duties of the employee shall be faithfully performed. Accordingly, the order of the lower court will be reversed and the case remanded to abide the result of the hearing by the county administrative officer as to whether the pending charges against the employee are true or false. And since one is not *res judicata* of the other, we add that the dismissal of the criminal proceedings against the employee would not preclude a finding in the administrative proceeding that the employee had done those things with which he was charged in the indictment. See 2 Freeman, *Judgments,* §§ 653-656. *Cf. Rouse v. State,* 202 Md. 481, 489, 97 A. 2d 285 (1953), *cert. den.* 346 U. S. 865 (1953).

> *Order reversed and case remanded for such further proceedings as are required as the result of the hearing by the county administrative officer; the costs on appeal to be paid by the appellee.*

BARNES, J., dissenting.

I dissent because, in my opinion, the majority has added a provision to the ordinance which is not there and was not intended by the legislative body to be included in the ordinance.

I will admit that I am attracted by the pious statements and high moral position appearing in the quotations from several cases cited in the majority opinion. The problem before us, however, is not one of morality or "divine justice," as it were. The question presented is the mundane one of statutory interpretation.

As I see the problem, there is really nothing in the ordinance to construe. The language could hardly be clearer. The phrase "creditable service" is defined by the ordinance and the definition does not include any words suggesting that the phrase includes "faithful" service. If the County Council intended that creditable service should include the concept of faithful service, it could easily have used appropriate language to express this intention—as was done by the General Assembly in the Act of 1920, Chapter 164, providing for police pensions for Baltimore County, and in the Act of 1922, Chapter 290, providing for pensions for firemen in the County. These acts have been amended by the County Council from time to time after 1959, the last amendments appearing in Council Bill 40, 1964. The County Council is not only charged with notice of these acts but amended them by its own action. The County Council had the responsibility of providing pensions under those acts. It cannot be concluded that the County Council intended to include the idea of faithful service in the general pension ordinance.

This exclusion undoubtedly produces the incongruous result described in the majority opinion. The County Council, however, sits quite frequently and if it wished to eliminate the incongruity, it could easily have done so by enacting an appropriate amendment to the general pension ordinance. This is a legislative function of the County Council. It is not a judicial function and, in my opinion, we should not, in effect, attempt by construction to amend the ordinance. We are vested with judicial powers only. We should leave the exercise of legislative power to the representatives of the people elected for that purpose.

The doctrine of the separation of powers is not only a binding doctrine of constitutional law, but it is of vital practical importance. Legislation is adoped after public hearings, debate, compromise and a consideration of the practical operation of the proposed legislation. Upon enactment, legislation usually operates prospectively and not retroactively, unless retroactivity is specifically provided in the legislative act. Courts deal with the problems of individual litigants and do not have the facilities to reach an informed view on legislative problems.

In the present case, the County Council *might conclude* that the overriding public interest would be served by leaving the ordinance as it is or in providing for the requirement of faithful service with limitations, however, in regard to the proof necessary to establish unfaithful service and the time within which the question of alleged unfaithful service might be raised, or the extent of the forfeiture of pension rights. These policy considerations can well arise when one considers one of the likely purposes of the county pension system, i.e., to attract qualified persons to the county service, which is often in competition with private business for employees. A completely honest employee may not be attracted by a pension fund which subjects his security for his declining years to inquiry at any time, and without any apparent limitations or safeguards, to an administrative body of the county government. He may fear—a groundless fear no doubt—that the decision in regard to his pension might be reached for partisan or political reasons or that he might be the victim of inter-office quarrels or malice. He may prefer the peace and certainty of pension systems of private employers to a public pension system subject to these perils. These are matters for legislative consideration, for it may be that the public interest may be served better by an absolute system which permits a few unfaithful public servants to receive pensions, than to unsettle the operation of the system generally. There are similar considerations of public policy involved in the many safeguards which surround persons accused of crime (which not unfrequently permit a guilty person to escape just punishment) and in the statute of limitations applicable to certain alleged crimes so that the innocent may be protected and the general public may enjoy a respite from the

possibility of criminal sanction after the passage of a certain time. It is obvious that we have not—and should not—consider these matters of public policy, but should leave them where they should be—in the hands of the legislative body.

The view I have expressed is not original. In *Spencer v. Bullock*, 216 F. 2d 54 (D. C. Cir., 1954) a similar situation had arisen under the District of Columbia pension statute relating to policemen. As in the case before us, there was no provision requiring "faithful service." The statute conferred the right to a member of the department to retire when he had reached the age of 55 and had served 25 years or more as a member of the department. The plaintiff (appellee in the *Bullock* case) was suspended because of a conspiracy indictment, but after the District Court directed his acquittal, was restored to duty. When he later applied for retirement, he had fulfilled the statutory requirements of age and duration of employment in the department. After making his election to retire and filing his application, he was ordered by the Chief of Police to explain the source of his income, which he failed to do. The Chief of Police suspended him and later the police trial board found, in addition to his failure to disclose the source of his income, that the applicant had failed to file required income tax returns for three years. The District Commission then dismissed the applicant from the police department, did not act directly on the application, but ordered the applicant's contributions to the retirement fund be returned to him. The District Court issued a mandatory injunction requiring the applicant's restoration to duty and the allowance to him of his retirement compensation. In affirming the District Court, Circuit Judge Edgerton, aptly stated:

> "The plaintiff was in active service when he made his election. He was qualified as to age and length of service. The statute imposes no other qualifications. We cannot read it as authorizing the Commissioners to deprive the plaintiff of a pension by making, after he elected to retire, the charges on which they dismissed him.
>
>    * * *

"As a matter of policy something may be said for, and against, § 4-508 [D. C. Code (1951)]. (1) It may be thought to promote the quality of the police force, since relatively certain pensions tend to make a relatively attractive job. * * * (2) On the other hand, it may be thought that policemen are more likely to behave well if they can always be denied a pension for behaving ill. The plaintiff appears to have behaved ill. Though Congress seems to have given weight to the first of these conflicting considerations of policy, the Corporation Counsel seems to recognize only the second, for he says 'The morale and efficiency of the Police Department * * * would be seriously affected by an affirmance of the decision of the lower court in this case.' On balance, morale and efficiency are perhaps as likely to be affected favorably as unfavorably. *However that may be, we cannot take away rights that Congress gave.* (Emphasis supplied). (216 F. 2d at 55-56).

Later, in 1961, the United States District Court for the District of Columbia in *Daigle v. McLaughlin,* 193 F. Supp. 902, considered the pension statute in regard to firemen in the District of Columbia. In *Daigle,* the plaintiff was convicted and sentenced in 1957 for an embezzlement which occurred in 1956. He was given a three-year suspended sentence. He had been suspended from employment on the day after his indictment in 1956. In 1958 the plaintiff, having the requisite age and time of employment, elected to retire. The trial board met in 1959, and decided to dismiss the plaintiff. This action was affirmed by the District Commissioners. The District Court required that the pension be paid the plaintiff, and stated in its opinon:

"But more important for the Court in thus construing the statute is the absence of any indication that in passing it and establishing eligibility for pensions, Congress meant to distinguish between those who elect to retire before being suspended and later dismissed, as did the plaintiff Bullock, and those whose suspension (but not dimissal) precedes such election.

"Nor, in the light of the Bullock case, can the Court accept the contention of the Commissioners' counsel that Congress meant to make the District of Columbia pension roll a 'roll of honor.' Rather, as the Court of Appeals indicated in Bullock, the pension system is instituted as a means of attracting qualified men to the police and fire services, a goal which would be impaired if 'the Commissioners may always deny a man a pension if they conclude he is unworthy of one.' * * *

"Especially is the Court reluctant to take the essentially legislative step of interpreting 'member' as 'member of a roll of honor' when it is only four years since Congress extensively revised this statute, a revision which occurred, it will be noted, after the Bullock decision. Congress and the District Commissioners knew that the exact question here at issue was left open in Bullock; they also should have recognized that to decide it against an applicant would be contrary to the spirit of that decision. It would have been an easy matter for Congress to have said: no pensions for those dismissed for misconduct from these public agencies.

"Thus, in the face of Court of Appeals' precedent and Congressional silence, this Court declines to engage in a doubtful exercise in statutory construction to reorient this pension system into an ancillary disciplinary vehicle from a device for attracting men to the police and fire departments by assuring them security in old age." (193 F. Supp. at 903-04).

See also *State, ex rel. Kirby v. Board of Fire Comm'rs of Hartford,* 129 Conn. 419, 29 A. 2d 452 (1942).

Many of the older cases cited by the majority are grounded, in part, on the concept that a pension to public employees is a mere gratuity, representing the graciousness of the Sovereign to its servants. More modern ideas in regard to pensions consider them as part of the *earnings* of an employee, especially when the employees contribute to the pension from their earnings, as is the situation in the present case. The newer concepts are more persuasive to me.

In the case at bar, it is clear that the appellee can never be convicted and suffer criminal sanctions in view of the decision of this Court in *State v. Comes,* 237 Md. 271, 206 A. 2d 124 (1965) for the matters with which he is basically charged before the County Administrative Officer. His situation is by no means as aggravated as was that of the fireman in *Daigle* who *had been indicted, convicted and sentenced* for embezzlement.

Our predecessors warned us against doing what, in my opinion, the majority has done in the present case, i.e., added the word "faithful" to the definition of creditable service. In *Rogan v. B. & O. R. R. Co.,* 188 Md. 44, 52 A. 2d 261 (1947), Judge Delaplaine, for the Court, in reversing the Chancellor, stated:

> "In the instant case the chancellor undertook to write into the Act, after the words 'gross receipts within the State,' the words 'to be computed by the line-mile method of apportionment.' Interpolation of words, to make a statute include matters which the Legislature did not expressly include, invades the function vested solely in the Legislature, however plausible may be the conjecture that those matters were within the legislative purview.

> "Even though a certain provision, which has been omitted from a statute, appears to be within the obvious purpose or plan of the statute, and to have been omitted merely by inadvertence, nevertheless the court is not at liberty to add to the language of the law; and the court must hold that the Legislature intended to omit the provision, however improbable that may appear in connection with the general policy of the statute. *Scaggs v. Baltimore & Washington R. Co.,* 10 Md. 268, 277. When there is nothing in the context of a statute to attach a different meaning to the words so as to be capable of expressly embracing the case before the court, the court cannot extend the statute to that case, unless it falls so clearly within the reasons of the enactment as to warrant the assumption that it was not specifically enumerated among those described by the Legislature, only because it may have

been deemed unnecessary to do so. If the case is omitted in the statute because not foreseen or contemplated, it is a *casus omissus,* and the Court, having no legislative power, cannot supply the defects of the enactment. Even if a statute is incomplete, so that it cannot be complied with without additional provisions which are not indicated by the act itself, the court cannot supply such defects so as to give validity to the act. *State ex rel. Mickey v. Reneau,* 75 Neb. 1, 104 N. W. 1151, 106 N. W. 451." (188 Md. at 54, 52 A. 2d at 266).

See also *Schmeizl v. Schmeizl,* 186 Md. 371, 375-76, 46 A. 2d 619 (1946).

Judge Menchine, in his opinion in the trial court, stated the point well when he said:

"It is for the legislative branch, not the judicial, to make the decision whether pension benefits should be restricted to those rendering 'honorable service.' The legislative branch has acted to require it of police and firemen; it has not seen fit to require it of general employees."

I would affirm.